[Crim. No. 14530. First Dist., Div. One. Apr. 13, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
KEVIN PATRICK QUINN, Defendant and Appellant.

252

## COUNSEL

Lawrence R. Horn, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, W. Eric Collins and Sanford Svetcov, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**THE COURT.\***—This is an appeal from a judgment sentencing appellant to state prison upon his convictions of burglary in the second degree, receiving stolen property, and possessing and exploding a destructive device. Only the last conviction is challenged on this appeal.

The evidence showed that on the afternoon of October 16, 1974, appellant was observed placing some yellow and black cord around a stick and then affixing a lead weight, a fuse, and a metal cylinder. Appellant told two witnesses that the yellow and black cord was "nitro" cord. Later testimony showed that nitro cord is an explosive material which can do the work of dynamite, although it is sometimes used merely to set off dynamite. Appellant also described the metal cylinder as a "blasting cap" and called the constructed device a "bomb."

Appellant told the witnesses that he was going to explode the device at 10 p.m. that evening in the car of Inspector Sisk of the Mill Valley Police Department. Sisk had previously arrested appellant in conjunction with a burglary at the home of Daniel Ellsberg.

*Before Molinari, P. J., Sims, J., and Elkington, J.

One of the above witnesses observed appellant drive to the Mill Valley police station that evening around 10 p.m., and subsequently heard an explosion, which sounded like a barrel or cherry bomb. Sisk's car was found to have been damaged by an explosive device. Appellant later told the other witnesses that he had blown up the car, but he said the "bomb" had not gone off to its full effect.

Inspector Sisk later recovered the lead weight, which was a sinker, from his damaged car. At some point after the explosion, just when is not made clear in the record, a 14-year-old informant of Sisk's brought him an 18-inch piece of yellow cord. These items were sent to a laboratory for analysis, but were never produced at trial.

By the time of the preliminary hearing, defense counsel knew of these items and their submission to the laboratory. He never requested to examine these items prior to trial nor did he ask for any available report.

At the conclusion of the trial, defense counsel argued that all evidence concerning the yellow and black cord used by appellant should be excluded as the defense had not had a chance to examine the 18-inch yellow cord and determine whether *it* was an explosive cord, or merely a slow burning safety fuse cord. The exclusion motion was denied. Appellant now contends that the yellow cord and the sinker sent to the laboratory were material on the issue of guilt or innocence, and he was prejudiced by the prosecution's wrongful "suppression" of them.

■ We have reviewed the arguments concerning the alleged suppression of material evidence by the prosecution and have concluded that no violation of any constitutional right occurred. The doctrines and cases relied upon by appellant require that there be suppression of evidence, regardless of the prosecutor's intent, in the face of a defense request for it; that the evidence be of a favorable nature for the defense; and that the evidence be material. (See *Moore* v. *Illinois* (1972) 408 U.S. 786, 794-795 [33 L.Ed.2d 706, 712-714, 92 S.Ct. 2562]; *Brady* v. *Maryland* (1963) 373 U.S. 83, 87 [10 L.Ed.2d 215, 218-219, 83 S.Ct. 1194]; *Bellizzi* v. *Superior Court* (1974) 12 Cal.3d 33, 36-37 [115 Cal.Rptr. 52, 524 P.2d 148], cert. den., 420 U.S. 1003 [43 L.Ed.2d 761, 95 S.Ct. 1445]; *People* v. *Kiihoa* (1960) 53 Cal.2d 748, 752-753 [3 Cal.Rptr. 1, 349 P.2d 673].)

We note that there was never any defense request for the production of this evidence until the trial's conclusion, despite knowledge of its existence. Moreover, there was nothing to show that the yellow cord sent

to the laboratory was relevant or material to this case. The prosecution never sought to admit any evidence regarding this cord; thus, there can be no complaint about any alleged suppression.

Although appellant's argument below and on appeal is primarily directed at the yellow cord, the materiality of the lead weight was considered by the trial court and by us. The trial court said the sinker was not material as there was no issue over the projectile nature of the explosive device. Thus, the materiality of the sinker is not apparent. In any event, it is clear that there was nothing about the weight that was favorable to appellant (see *Moore* v. *Illinois, supra,* 408 U.S. 786, 794-795 [33 L.Ed.2d 706, 712-714]; *Brady* v. *Maryland, supra,* 373 U.S. 83, 87 [10 L.Ed.2d 215, 218-219]), or that might have helped prove his innocence. (See *Bellizzi* v. *Superior Court, supra,* 12 Cal.3d 33, 36-37; *People* v. *Kiihoa, supra,* 53 Cal.2d 748, 752-753.)

Appellant's second contention is also unpersuasive. The information charged that appellant violated section 12303.3[1] of the Penal Code in that he did possess and explode a destructive device with the intent of wrongfully injuring and destroying property.

The term "destructive device" as used in section 12303.3 is defined in section 12301 of the Penal Code as follows:

"(a) The term 'destructive device,' as used in this chapter, shall include any of the following weapons:

"(1) Any projectile containing any explosive or incendiary material or any other chemical substance, including, but not limited to, that which is commonly known as tracer or incendiary ammunition, except tracer ammunition manufactured for use in shotguns.

"(2) Any bomb, grenade, explosive missile, or similar device or any launching device therefor.

"(3) Any weapon of a caliber greater than .60 caliber which fires fixed ammunition, or any ammunition therefor, other than a shotgun or shotgun ammunition.

[1]This section reads: "Every person who possesses, explodes, ignites, or attempts to explode or ignite any destructive device or any explosive with intent to injure, intimidate, or terrify any person, or with intent to wrongfully injure or destroy any property, is guilty of a felony, and shall be punished by imprisonment in the state prison for a period of not less than five years."

"(4)· Any rocket, rocket-propelled projectile, or similar device of a diameter greater than 0.60 inch, or any launching device therefor, and any rocket, rocket-propelled projectile, or similar device containing any explosive or incendiary material or any other chemical substance, other than the propellant for such device, except such devices·as are designed primarily for emergency or distress signaling purposes.

"(5) Any breakable container which contains a flammable liquid with a flashpoint of 150 degrees Fahrenheit or less and has a wick or similar device capable of being ignited, other than a device which is commercially manufactured primarily for the purpose of illumination.

"(b) The term 'explosive,' as used in this chapter, shall mean any explosive defined in Section 12000 of the Health and Safety Code."

As noted, the term "explosive" as used in section 12303.3 is defined by section 12000 of the Health and Safety Code.

 Appellant contends that the trial court incorrectly construed sections 12301 and 12303.3 to include the device he used as the term "bomb" in subdivision (a)(2) of section 12301 should be construed to mean a projectile-type bomb and not merely a homemade, explosive-type bomb, as was used in this case.

Appellant's contentions are not well taken. First, the court's interpretation did not flout any legislative mandate to keep the categories of "destructive devices" and "explosives" mutually exclusive; there is no such mandate. Section 12303.3 of the Penal Code refers to the possession and explosion of either type of entity. Section 12000 of the Health and Safety Code defines "explosive," but says only that for purposes of "this part," meaning Part I of Division 11 of the Health and Safety Code, "explosive" cannot include a "destructive device." There is no similar provision in either section 12301 or 12303.3; thus, there is no legislative mandate that explosives not be included in the category of destructive devices.

 Secondly, the trial court's construction did not violate the rule of interpretation set down in *Palermo v. Stockton Theatres, Inc.* (1948) 32 Cal.2d 53, 59-60 [195 P.2d 1]. This rule is violated only if an

258

unconstitutional construction is placed on a statute when a constitutional one was available. Since we have concluded below that the term "bomb" is not vague either on its face or as construed, there was no unconstitutional construction placed on the legislation.

Thirdly, the construction made did not violate the rule of interpretation set down in *People* v. *Moroney* (1944) 24 Cal.2d 638, 642-643 [150 P.2d 888]. ■ Although the destructive devices named in subdivisions (a)(1) through (a)(4) of section 12301, with the possible exception of "bomb," are either projectile devices or projectile-throwing devices, the same is not necessarily true of the device in subdivision (a)(5). This device, apparently a "Molotov Cocktail," is often thrown, but need not be. Thus, the term "bomb" need not be interpreted to mean a projectile bomb in order to harmonize it with the rest of the section.

■ Most importantly, however, there is a clear manifestation of the legislative intent concerning the construction of "bomb"; thus, the rules of interpretation relied upon are not determinative. Chapter 771 of Statutes of 1970 amended section 12301 and added section 12303.3. (Stats. 1970, ch. 771, §§ 4, 6, pp. 1457-1458.) Section 11 of chapter 771 contains an urgency message reading: "Bombings of buildings have taken place at an increased rate recently, and in order to deter such acts, which endanger many lives and cause extremely severe damage to property, it is necessary that this act go into effect immediately." (See p. 1458.)

The legislation involved was thus clearly addressed to the type of bombings occurring at that time, and it is common knowledge that few, if any, of these occurred from projectile-type bombs, or "bombs" as militarily defined. The urgency message thus makes it clear that the term "bomb" as used in section 12301 need not be construed in the limited sense urged by appellant. The construction made by the trial court was consistent with the legislative intent.

■ The evidence was sufficient to support the trial court's determination that the device used was a "bomb," as that term was construed. The component parts of the device, including the explosive nitro-cord, the damage done, and appellant's own characterization of the device as a bomb provide such evidence.

■ Even if appellant were to prevail his contentions regarding the construction of the term "bomb," a reversal would not be required. The

information alleged the violation of section 12303.3 and named the means used, i.e., by possession and explosion of a destructive device. It was not necessary for the particular means to have been mentioned since the means was not of the essence of the offense. (See Witkin, Cal. Criminal Procedure (1963) Proceedings Before Trial, § 199, p. 188.) The fact the evidence can be characterized as showing merely that an "explosive" was used instead of a "destructive device" would mean only that an immaterial variance between pleading and proof had occurred. (*Id.*, §§ 193, 195, pp. 182-184.)

The evidence firmly established either that a "bomb" within section 12301 of the Penal Code or an "explosive" within section 12000 of the Health and Safety Code was possessed and exploded by appellant with the requisite intent. Either way, however, section 12303.3 was violated as the information alleged.

█ Appellant's last argument is that there was an unconstitutional vagueness in section 12301 in that the meaning of the term "bomb" cannot be known to persons of common intelligence. We have concluded that the statute involves no unconstitutional vagueness of which appellant can complain. The lower court adopted a construction of bomb as it is used in a common, accepted, and popular sense. (See Webster's Third New Internat. Dict. (1965 unabridged).) Since such a definition was adopted, there is no vagueness problem with the term. (See *People* v. *Poulin* (1972) 27 Cal.App.3d 54, 60 [103 Cal.Rptr. 623]; see also 1 Witkin, Cal. Crimes (1963) Introduction, §§ 19, 26, pp. 23-24, 29-30.) This popular meaning gives the statute sufficient clarity to avoid any constitutional difficulty.

In any event, the statute was clearly not vague as construed and applied to appellant. The fact it might have created vagueness problems as construed and applied in other situations, for example, those involving cherry bombs, affords appellant no relief. (See *In re Cregler* (1961) 56 Cal.2d 308, 313 [14 Cal.Rptr. 289, 363 P.2d 309].)

Judgment affirmed.