**SPRINGFIELD ARMORY, INC., et al., Plaintiffs,**

v.

**CITY OF COLUMBUS, et al., Defendants.**

No. C2–91–330.

United States District Court, S.D. Ohio, E.D.

Feb. 3, 1992.

Stephen P. Halbrook, Fairfax, Va., Donald C. Brey, Chester, Hoffman, Willcox & Saxbe, Columbus, Ohio, for plaintiffs.

Glenn B. Redick, Asst. City Atty., City of Columbus, Dept. of Law, Columbus, Ohio, for defendants.

## OPINION AND ORDER

GRAHAM, District Judge.

Plaintiffs bring this action under 28 U.S.C. § 2201, 2202; 42 U.S.C. §§ 1983 and 1988; and Article I § 10 and the Fourteenth Amendment of the United States Constitution, challenging the constitutionality of Columbus City Code §§ 2323.01 and 2323.05 which restrict the sale and possession of certain firearms that the Columbus Code classifies as "assault weapons." The plaintiffs in this action are two firearms manufacturers, Springfield Armory, Inc. ("Springfield Armory") and Colt's Manufacturing Company, Inc. ("Colt"); a federally-licensed firearms dealer whose busi-ness is located in Columbus, Daniel D. Donaldson d/b/a Dan's Gun Store; and three residents of Columbus, Barbara P. Smith, Vicki L. Spino–Smith and Gerald L. Smolak, who wish to buy firearms affected by the subject ordinance. Defendants in this action are the City of Columbus and City Attorney Ronald J. O'Brien in his official capacity. Presently before the Court are the parties' cross motions for summary judgment.

### I.

On May 22, 1989 the Columbus City Council enacted Ordinance No. 1226–89 amending Columbus Code §§ 2323.01 and 2323.05 so as to ban the purchase and sale of firearms designated as "assault weapons." As amended, Columbus Code § 2323.01(I) provides in part as follows:

"Assault weapon" means any of the following:

(1) All of the following specified rifles:

. . . . .

5. Colt AR–15 and CAR–15.

. . . . .

13. Springfield Armory BM59 and SAR–48.

. . . . .

(4) Other models by the same manufacturer with the same action design that have slight modifications or enhancements of the firearms listed in subparagraphs (1), (2), and (3), provided the caliber exceeds .22 rimfire.

Thus, the subject ordinance's definition of "assault weapon" is limited to the specific firearms listed in the ordinance along with any others by the same manufacturers employing the same action design but with slight modifications or enhancements. Columbus Code § 2323.05(A) provides that no person shall knowingly sell an assault weapon. Section 2323.05(B) provides that no person shall knowingly possess an assault weapon unless, as provided in paragraph (c), the person lawfully possessed the assault weapon before October 31, 1989 and properly registered the weapon between November 1 and November 30, 1989. Violation of § 2323.05 constitutes a first

degree misdemeanor, punishable by up to six months imprisonment and a $5,000 fine.

Springfield Armory is a federally-licensed firearm manufacturer and importer located in Illinois. Colt is a federally-licensed firearm manufacturer located in Connecticut. Springfield Armory and Colt both manufacture firearms which are listed as banned assault weapons in the subject ordinance, as well as other firearms which are not listed but may be affected by the ordinance. Plaintiff Donaldson does business as Dan's Gun Store in Columbus, Ohio. The remaining three plaintiffs are Columbus residents.

Representatives of both Springfield Armory and Colt indicate in their affidavits that they are unable to determine the meaning of the phrase "slight modifications or enhancements" contained in Columbus Code § 2323.01(I)(4). Both also assert that the ordinance does not list or ban firearms made by other manufacturers which are functionally identical to the banned Springfield Armory and Colt firearms. Plaintiff Donaldson states in his affidavit that he is afraid to stock at his store firearms not specifically listed in Columbus Code § 2323.01 but that are manufactured by the same manufacturers who make the listed firearms because he does not know what firearms are included within the term "other models by the same manufacturer with the same action design that have slight modifications or enhancements."

Donaldson also avers that he wishes to buy from Colt an AR–15 Sporter rifle to sell to plaintiff Smith, and that he wishes to buy from Springfield Armory a BM59 rifle and a SAR–48 rifle to sell to plaintiffs Smolak and Spino–Smith, respectively. Plaintiffs Smith, Smolak and Spino–Smith confirm in their affidavits that they want to purchase the firearms from Donaldson. All plaintiffs agree that but for the subject ordinance they would proceed with the above-described proposed transactions.

Plaintiffs assert three claims for declaratory and injunctive relief: (1) that the subject ordinance constitutes an unconstitutional bill of attainder; (2) that the term "slight modifications or enhancements" is unconstitutionally vague; and (3) that the term "Colt AR–15" is either unconstitutionally vague or does not include "Colt AR–15 Sporter."

## II.

The procedure for granting summary judgment is found in Fed.R.Civ.P. 56(c), which provides:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). However, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). *See also Matsushita Electric Industrial Company, Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The Sixth Circuit Court of Appeals has recognized that *Liberty Lobby*, *Celotex* and *Matsushita* effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir.1989). The court in *Street* identified a number of important principles applicable in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for

summary judgment. *Id.* at 1479. In addition, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Id.* (quoting *Liberty Lobby,* 477 U.S. at 257, 106 S.Ct. at 2514). The nonmoving party must adduce more than a scintilla of evidence to overcome the summary judgment motion. *Id.* It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'" *Id.* (quoting *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356). Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.

## III.

■ The Court will first examine whether a triable issue exists as to whether the ordinance is an unconstitutional bill of attainder. Art. I § 10 of the United States Constitution provides in pertinent part that "[n]o state shall ... pass any Bill of Attainder ..." In essence, a bill of attainder is "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial. *Nixon v. Administrator of General Services,* 433 U.S. 425, 468, 97 S.Ct. 2777, 2803, 53 L.Ed.2d 867 (1977). Thus, a plaintiff challenging a legislative act on the ground that it is an unconstitutional bill of attainder must prove three elements: nonjudicial infliction of punishment; specificity as to the identity of individuals affected; and lack of a judicial trial. *See* 16A Am.Jur.2d *Constitutional Law* § 655 (1979). These elements must be established by the "clearest proof." *Communist Party of the United States v. Subversive Activities Control Board,* 367 U.S. 1, 83, 81 S.Ct. 1357, 1403, 6 L.Ed.2d 625 (1960).

■ The parties dispute all three elements, although the most of the parties' discussion on the attainder issue appropriately focuses on the punishment element. Because the Court finds the element of punishment to be dispositive with respect to plaintiffs' attainder claim, it is unnecessary for the Court to reach the other two elements.

Plaintiffs argue, *inter alia,* that the subject ordinance deprives them of the opportunity to sell the banned firearms in Columbus, resulting in economic harm to Springfield Armory and Colt. Defendants maintain that the element of punishment is lacking because the burdens imposed upon Springfield Armory and Colt do not fit within the historic definition of punishment for purposes of attainder; because the ordinance fulfills a legitimate nonpunitive purpose; and because there is no evidence of any intent to punish Springfield Armory or Colt.

■ A legislative act does not automatically violate the prohibition against bills of attainder merely because it places some burden upon an identified individual or group. *Nixon,* 433 U.S. at 470–72, 97 S.Ct. at 2803–05. That is, specificity alone does not establish that a law is an unconstitutional bill of attainder. *Id.* Rather, the burden imposed by the legislature must constitute punishment. Three tests have been identified as applicable to the determination whether the burden imposed by a legislative act is punishment for bill of attainder purposes: the historical experience test; the functional test; and the motivational test. *Id.* at 473–84, 97 S.Ct. at 2805–13.

### 1. *The Historical Test*

■ The historical test requires the court to examine whether the burden imposed by the subject legislation falls within the category of punishments traditionally judged to be prohibited by the Bill of Attainder Clause. *Nixon,* 433 U.S. at 473–74, 97 S.Ct. at 2805–06. In *Nixon,* the Court identified the following punishments as those historically prohibited by the Bill of

Attainder Clause: the death sentence; imprisonment; banishment; confiscation of property; and barring individuals or groups from participation in specified employments or vocations. *Id.* at 473–74, 97 S.Ct. at 2805–06.

For the proposition that the subject ordinance falls within the historic category of unconstitutional bills of attainder, plaintiffs primarily rely on two cases: *United States v. Lovett,* 328 U.S. 303, 66 S.Ct. 1073, 90 L.Ed. 1252 (1946); and *Ex Parte Garland,* 71 U.S. (4 Wall.) 333, 18 L.Ed. 366 (1867). In *Lovett,* Congress passed a law barring named individuals, who had been employees of the federal government, from receiving any salary or compensation from the federal government except for jury service or service in the armed forces. The law was passed because the named individuals allegedly were involved in "subversive activities." *Lovett,* 328 U.S. at 314, 66 S.Ct. at 1078. The Court held that the law was an unconstitutional bill of attainder. *Id.* at 315, 66 S.Ct. at 1078.

In *Garland,* Congress passed a law barring attorneys from practicing in federal court if they violated the provisions of an oath requiring them to swear, *inter alia,* that they had never partaken in any hostile action against the United States. The petitioner in *Garland* was a member of the senate of the confederate state of Arkansas during the Civil War. The *Garland* Court held that the law violated the constitutional prohibition against bills of attainder. 71 U.S. (4 Wall.) at 377.

Plaintiffs' reliance on *Lovett* and *Garland* is apparently an attempt to implicate the last historically recognized prohibited punishment mention in *Nixon:* the barring of individuals or groups from specified employments or vocations. *Nixon,* 433 U.S. at 474, 97 S.Ct. at 2806. Plaintiffs seem to argue that *Lovett* and *Garland* involved a form of economic harm, and that these cases are therefore analogous to the instant case. The Court disagrees. *Lovett, Garland* and other cases involving employment or vocation are clearly distinguishable from the instant case in both the kind and degree of economic burden imposed. In

*Lovett,* for example, the federal employees were discharged from their employment and effectively prohibited from seeking future federal employment. In *Garland,* an attorney was prohibited from practicing in federal court. In the instant case, in contrast, it is not alleged that the subject Columbus ordinance in any way bars Springfield Armory or Colt from pursuing a particular livelihood. The ordinance does not prevent them from manufacturing or selling firearms in general. Indeed, it does not prohibit them from manufacturing so-called "assault weapons," and selling them in places other than Columbus. Most significantly, the subject ordinance does not prohibit Springfield Armory and Colt from selling firearms and goods in Columbus other than those affected by the ordinance. Neither Springfield Armory nor Colt assert that all of the goods they manufacture or import for sale in Columbus are affected by the ordinance. For these reasons the Court concludes that as a matter of law the historical test for punishment has not been satisfied.

## 2. *The Functional Test*

■ In addition to the historical test, the Court must apply a functional test in determining whether the subject ordinance imposes punishment for purposes of bill of attainder analysis. *Nixon,* 433 U.S. at 475, 97 S.Ct. at 2806. The functional test requires the court to analyze whether the challenged law, viewed in terms of the type and severity of burdens imposed, can be said to further nonpuntive purposes. *Id.* at 475–76, 97 S.Ct. at 2806–07; *Gardner v. City of Columbus,* 841 F.2d 1272, 1276 (6th Cir.1988). It is reasonable to conclude that punishment was the purpose where legitimate legislative purposes do not appear. *Id.* 433 U.S. at 476, 97 S.Ct. at 2807. The plaintiff bears the burden of establishing "that the legislature's action constituted punishment and not merely the legitimate regulation of conduct." *Id.* n. 40.

Defendants assert that the ordinance represents a proper exercise of police power. They maintain that the ordinance was passed in reaction to the increase of crime and violence in our society, and to prevent

tragedies like the killing of five school children in Stockton, California on January 17, 1989 by John Purdy, who used an AK–47 assault rifle. Plaintiffs argue that a beneficial purpose does not preclude a law from being a bill of attainder; that defendants' evidence is irrelevant or inadmissible for purposes of Fed.R.Civ.P. 56, and that although the ordinance has been in effect over two years, defendants concede that only one person has been arrested for violating it.

The Court finds that as a matter of law the ordinance, on its face, was designed to serve a nonpunitive purpose, namely, the protection of the people of Columbus from the perceived danger posed by certain firearms. This is clearly a legitimate exercise of the city's police power. In relation to the potential harm sought to be averted by the ordinance, the severity of the burden imposed upon Springfield Armory and Colt is slight. Lastly, the mere fact that only one arrest has been made for the violation of the ordinance is not evidence that the nonpunitive purpose has not been served by its existence. For all of these reasons the Court holds that as a matter of law plaintiffs cannot satisfy the functional test.

3. *Motivational Test*

 The Court in *Nixon* also recognized a third test, the "motivational" test, for determining whether a burden imposed by a legislative act constitutes punishment. 433 U.S. at 478, 97 S.Ct. at 2808. Under the motivational test, the Court must determine whether the legislative history of the challenged act evinces an intent to punish. *Id.* In determining intent the court should also consider whether less burdensome alternatives were available. *Id.* at 482, 97 S.Ct. at 2810.

The defendants offer as evidence of a lack of intent to punish Springfield Armory or Colt the preamble to the subject ordinance:

> WHEREAS, Council has studied the effect of unregulated possession or sale of assault weapons, and
>
> WHEREAS, to protect the health, safety and welfare of its citizens and law

enforcement officers it is in the best interest of the City of Columbus to ban the possession and sale of assault weapons, and require the registration and licensing of currently possessed assault weapons, and

> WHEREAS, Council finds that the primary purpose of assault weapons, as defined herein, is anti-personnel, and not for legitimate sporting, hunting, collecting, or target shooting purposes, and
>
> WHEREAS, to keep such assault weapons out of the hands of criminals, particularly drug traffickers, and to help prevent violence it is necessary to ban and regulate such weapons,
>
> WHEREAS, the ability to purchase firearms without delay or a waiting or cooling off period has contributed to the purchase of firearms after an incident where the purchaser is physically, mentally, or emotionally upset due to the incident, and
>
> WHEREAS, to avoid the purchase of firearms when the purchaser is physically, mentally, or emotionally upset due to an incident which may create a risk of immediate unlawful use or risk of harm to other persons, it is in the best interest of the City to require a seven day waiting or cooling off period before a firearms purchase permit is issued, and
>
> WHEREAS, large capacity magazines may be used in an unregulated firearm which will accept such magazines, thus bringing such weapon within the ambit of the purpose of this Ordinance to regulate semi-automatic weapons that permit the firing of a large number of rounds at one time without reloading, it is in the interest of the City to regulate such magazines ...

Plaintiffs offer no evidence of any intent to punish aside from pointing out that the ordinance specifically names Springfield Armory and Colt in its list of banned firearms. However, specificity alone does not violate the bills of attainder clause. *Nixon*, 433 U.S. at 472, 97 S.Ct. at 2805. Plaintiffs have also failed to suggest any less burdensome alternative that would fulfill the nonpunitive purpose of the ordinance.

The Court finds that there is a complete absence of evidence of any intent to punish Springfield Armory or Colt. Plaintiffs have, as a matter of law, failed to establish punishment under the motivational test.

In passing, the Court notes that plaintiffs argue that functionally identical firearms made by other manufacturers, such as the "Ruger Mini–14" are not banned by the ordinance. However, plaintiffs' complaint is devoid of any reference to an equal protection claim. The prohibition against bills of attainder is not a substitute for equal protection, and underinclusiveness does not, in any event, provide plaintiffs with a basis for relief in this context. *Nixon*, 433 U.S. at 471 n. 33, 97 S.Ct. at 2804 n. 33.

In sum, the Court holds that as a matter of law the burden imposed by the ordinance does not fit within the category of punishments historically prohibited by the bills of attainder clause; the subject ordinance was designed to serve the nonpunitive purpose of protecting people from the perceived dangers presented by the listed firearms; and that there is no evidence that the purpose of the ordinance was to punish Springfield Armory or Colt. The Court therefore further holds that as a matter of law the subject ordinance is not an unconstitutional bill of attainder.

### IV.

■ In Count Two of their complaint, plaintiffs assert that the subject ordinance is unconstitutionally vague in violation of the Fourteenth Amendment of the United States Constitution. Specifically, plaintiffs challenge Columbus Code § 2323.01(1)(4), which includes within the definition of assault weapons, in addition to those specifically listed:

Other models by the same manufacturer with the same action design that have *slight modifications or enhancements* of firearms listed in subparagraphs (1), (2), and (3), provided the caliber exceeds .22 rimfire.

(emphasis added). Plaintiffs also assert that the term "Colt AR–15" as used in Columbus Code § 2323.01(I)(1)5 is void for vagueness. However, the term "Colt AR–15" will be discussed in the next section of this opinion and order in connection with Count Three.

■ Under the due process clause of the Fourteenth Amendment, a criminal statute is void for vagueness if its prohibitions are not clearly defined. *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). Vague laws may offend one of several values. First, vague laws may trap innocent persons by failing to provide fair warning. *Id.* Second, vague laws create the risk of arbitrary and discriminatory enforcement by police, judges and juries. *Id.* Third, a vague law may infringe upon the exercise of other recognized constitutional rights, and in particular some may have a chilling effect on rights guaranteed under the First Amendment. *Id.* at 109, 92 S.Ct. at 2299.

■ The well-established test is that a criminal statute is void for vagueness if persons of ordinary intelligence are unable to ascertain what actions are illegal. *Schad v. Arizona*, — U.S. ——, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991); *Grayned*, 408 U.S. at 108, 92 S.Ct. at 2298; *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). Thus, "[T]he complainant must prove that the enactment is vague 'not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.'" *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 n. 7, 102 S.Ct. 1186, 1191 n. 7, 71 L.Ed.2d 362 (1982) (quoting *Coates v. City of Cincinnati*, 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214 (1971)). "[A]lmost any word or phrase may be rendered vague and ambiguous by dissection with a semantic scalpel.... [But such an approach] amounts to little more than verbal calisthenics." *Cole v. Richardson*, 405 U.S. 676, 683–84, 92 S.Ct. 1332, 1337, 31 L.Ed.2d 593 (1972). Hence, mathematical precision on the part of drafters of legislation is not required. *Grayned*, 408 U.S. at 109, 92 S.Ct. at 2299. "The strong presumptive validity that at-

taches to an Act of Congress has led this Court to hold many times that statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language." *United States v. National Dairy Corp.*, 372 U.S. 29, 32, 83 S.Ct. 594, 597, 9 L.Ed.2d 561 (1963). A strong presumption of validity likewise attaches where, as here, the state law is a safety measure. *Bibb v. Navajo Freight Lines*, 359 U.S. 520, 524, 79 S.Ct. 962, 964, 3 L.Ed.2d 1003 (1959).

"[I]f the general class of offenses to which the statute is directed is plainly within its terms, the statute will not be struck down as vague, even though marginal cases could be put where doubts may arise." *United States v. Harriss*, 347 U.S. 612, 618, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954). "And if this general class of offenses can be made constitutionally definite by a reasonable construction of the statute [the] Court is under a duty to give the statute that construction." *Id.; see also Kay v. Austin*, 621 F.2d 809, 812 (6th Cir. 1980). "One to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Parker v. Levy*, 417 U.S. 733, 756, 94 S.Ct. 2547, 2562, 41 L.Ed.2d 439 (1974). "[V]agueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *United States v. Mazurie*, 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975).

This case does not involve the alleged infringement of First Amendment freedoms. Therefore, plaintiffs' vagueness challenge must be examined in the light of the facts of this case. *Mazurie*, 419 U.S. at 550, 95 S.Ct. at 714. Hence, the Court is not free to speculate as to whether, under hypothetical circumstances, the ordinance may be vague. Rather, the Court must examine the facts of this case. What are the facts of this case?

Thomas W. Reese, Vice–Chairman of Springfield, states the following in his affidavit in support of plaintiffs' motion for summary judgment:

The terms "slight modifications or enhancements" are too vague to give guidance to our company of what is prohibited. We have redesigned and are marketing sporting rifles which are different from the SAR–48 and BM59, but have no way to determine whether these rifles would be encompassed in the above vague language.

(Reese affidavit, para. 8). In a similar fashion, Patrick M. Squire, Vice President and General Counsel of Colt, states the following in his affidavit:

The terms "slight modifications or enhancements" are too vague and ambiguous to give notice to our company of what is prohibited. We have designed and are marketing rifles which are different from the Colt AR15 Sporter, but have no way to determine whether these rifles would be encompassed in the above vague and ambiguous language.

(Squire affidavit, para. 11). Plaintiff Daniel D. Donaldson states in his affidavit:

§ 2323.01(I)(4) bans "other models by the same manufacturer with the same action design that have slight modifications or enhancements." Since I do not know which firearms may be included in these vague terms, I am afraid to stock and sell various other firearms made by the listed manufacturers, such as a high-quality target rifle manufactured by Springfield Armory.

(Donaldson affidavit, para. 6).

The affidavits have three things in common. First, each affidavit refers to firearms other than those listed in the ordinance but made by the same manufacturers. Second, all three affiants claim that they cannot tell whether these "other firearms" would be included in the ban because of the alleged vagueness of the term "slight modifications or enhancements." Third, all three affidavits fail to specify the "other firearms." The closest the plaintiffs come to doing so is in the affidavit of Donaldson, in which he refers to an unspecified high-quality target rifle allegedly manufactured by Springfield.

The Court finds that the current record does not contain sufficient facts to allow it

to examine plaintiffs' vagueness challenge "in the light of the facts of the case at hand." Because this case does not involve an impingement upon First Amendment freedoms, the Court is not free to speculate whether persons of ordinary intelligence would be unable to ascertain whether imagined, hypothetical firearms would be banned by the ordinance.

Colt, Springfield and Donaldson all say that they are unable to ascertain whether certain other firearms are included within the ban. Without seeing these "other firearms," however, the Court cannot determine the accuracy of this assertion. Perhaps the differences between these "other firearms" and the ones banned are so drastic that a person of ordinary intelligence would immediately recognize that the "other firearms" are not included within the ban. Another possibility is that the differences between the "other firearms" and the banned weapons are so slight that a person of ordinary intelligence would immediately conclude that the "other firearms" are banned. Of course, the third possibility is that the differences between the "other firearms" and the banned weapons are such that a person of ordinary intelligence would be unable to determine whether the "other firearms" are banned. The ordinance is constitutionally vague only if the third possibility is true.

For these reasons, the Court finds that this issue is not amenable to summary judgment based on the current record. The Court will therefore schedule this matter for an evidentiary hearing in order to resolve this issue. The parties are informed that the Court believes that the phrase "same action design" may be particularly significant to its decision. If the term "same action design" has a broad, generic meaning rather than a narrow, specific meaning, then it may be more likely that the ordinance is unconstitutionally vague. Hence, the Court will, among other things, seek to arrive at the meaning of "action design," and compare the action designs of the "other firearms" with those of the banned weapons.

## V.

In Count three of their complaint, plaintiffs seek a declaratory judgment that the Colt AR–15 Sporter rifle is not an assault weapon defined in the subject ordinance. In Count Two plaintiffs raise a related claim, asserting that the term "Colt AR–15" used in Columbus Code § 2323.-01(I)(1)5 is unconstitutionally vague. In essence, plaintiffs contend that "Colt AR–15" designates only Colt's selective fire, and thus fully automatic, military machinegun also known as the "M–16," and that "Colt AR–15" does not include Colt's semi-automatic rifle known as the "AR–15 Sporter."

In making this argument plaintiffs rely on the affidavit of Colt's vice-president and general counsel, Patrick M. Squire, and exhibits attached to Squire's affidavit. Squire avers that the Colt AR–15 is a selective fire, fully automatic machine gun and assault rifle. Squire also states that the receiver of the selective-fire Colt AR–15 is engraved "Colt AR–15."

Photographs in an article attached to Squire's affidavit depict the engraving on the selective-fire AR–15 receiver. The article also contains diagrams of the AR–15's selective-fire mechanism operating in the fully-automatic mode. Squire states that the "Colt AR–15 Sporter" is a semi-automatic rifle designed for target shooting, hunting and other lawful activities. He also asserts that the federal Bureau of Alcohol, Tobacco and Firearms approved the Colt AR–15 Sporter as a semi-automatic rifle. Squire says that the receiver of the AR–15 Sporter is engraved "AR–15 Sporter," but no photographs depicting the AR–15 Sporter receiver have been submitted by plaintiff. Lastly, Squire avers that the Colt AR–15 Sporter semi-automatic receiver and internal operating parts have a fundamentally different design than those of the Colt AR–15. However, the materials attached to Squire's affidavit do not contain any diagrams of the AR–15 Sporter's mechanism.

Defendants argue that the term "Colt AR–15" is commonly used to refer to Colt's semi-automatic civilian version of the M–16 machine gun. Defendants maintain that

"AR–15" is a generic term encompassing an entire family of semi-automatic firearms manufactured by Colt. Defendants offer several items of evidence in support of these assertions. First, defendants offer copies of pages from Colt's 1989 and 1985/86 price lists. The 1989 price list includes a section called "COLT SEMI–AU-TOMATIC RIFLES AND CARBINES." Under this is the heading "AR–15 A2 RI-FLES AND CARBINES." The following items are listed under this heading:

AR–15 A2 Sporter II
AR–15 A2 Gov't Carbine
AR–15 A2 Gov't Model
AR–15 A2 H–Bar
AR–15 A2 Delta H–Bar

Also listed under the heading is the "AR–15 Scope w/Mount."

The 1985/86 Colt price list includes a section called "AR–15 SPORTERS." The following items are listed under this heading:

AR–15 A2 Carbine (FA)
AR–15 9mm Carbine
AR–15 A2 (FA)
AR–15 A2 HBAR (FA)
 Target Sight/Heavy Barrel

Defendants also submit a copy of page 271 from the *1991 Gun Digest Book of Firearms Assembly/Disassembly*, which describes the COLT AR–15, stating in part: "While the selective Fire M–16 is available to police agencies, many smaller departments and individual officers prefer the *semi-auto AR–15.*" (emphasis added). In addition, defendants submit pages from the *1989 Annual Guns & Ammo Complete Firearms Catalog & Manufacturers Directory*, which lists, under the section entitled "SEMI–AUTOMATIC CENTERFIRE" the "COLT AR–15 A2 H–BAR."

Defendants also offer papers filed by plaintiffs' co-counsel, Stephen P. Halbrook, in *Fresno Rifle & Pistol Club, Inc. v. Van de Kamp*, 746 F.Supp. 1415 (E.D.Cal.1990). One of the excerpts is from an affidavit by James R. Erdman, executive director of the California Rifle and Pistol Association, in which Erdman states, in part: "The Colt AR–15 is the commercial semi-automatic version of the Army M–16 service rifle, ..." Other excerpts consist of portions of briefs filed by Halbrook in which on several occasions he used "AR–15" as a shorthand for AR–15 Sporter.

In addition, defendants offer copies of pages from the revised 7th edition of *Modern Guns Identification & Values*, wherein the Colt AR–15, AR–15 A2 and AR–15 A2 Carbine are described as "Gas operated semi-automatic" firearms. Also included in defendants' exhibits are several pages from an issue of the National Rifle Association's publication *Semi–Auto Rifles*, which contains an article title "THE AR–15, REDEFINED" describing the AR–15 as a semi-automatic rifle.

Defendants also submit Colt's 1989 Firearms Catalog, wherein it is stated on page 8:

Colt AR–15 A2 rifles are semi-automatic 223 caliber gas operated rifles which fire from a closed bolt. They are lightweight, rugged and easy to maintain in the field. The sporting and military models are manufactured in the same factory and on the same production line. All Colt AR–15 A2 rifles incorporate many of the features of the M–16 A2 rifle adopted by armed forces throughout the free world.

Moreover, defendants argue that the preamble to the ordinance supports the proposition that the term "Colt AR–15" includes the "Colt AR–15 Sporter":

WHEREAS, large capacity magazines may be used in an unregulated firearm which will accept such magazines, thus bringing such weapon within the ambit of *the purpose of this Ordinance to regulate semi-automatic weapons that permit the firing of a large number of rounds at one time without reloading,* it is in the interest of the City to regulate such magazines.

(emphasis added). Defendants maintain that because the stated purpose of the ordinance is to regulate semi-automatic weapons, a person of ordinary intelligence would interpret "Colt AR–15" to include the semiautomatic Colt AR–15 Sporter.

**500**

Lastly, during oral argument on the parties' motions for summary judgment, Colt conceded that the term "AR–15" is used as a shorthand for the AR–15 Sporter.

Based on the foregoing evidence, the Court finds that genuine issues of material fact exist as to whether the term "AR–15" includes "AR–15 Sporter," and whether a person of ordinary intelligence would know the meaning of "AR–15." On the one hand, there is evidence in the record to the effect that AR–15 means only the selective-fire fully-automatic military firearm also known as the "M–16." On the other hand, there is substantial evidence that the term "AR–15" has a widely-known generic or secondhand meaning that encompasses the AR–15 Sporter. For these reasons, an evidentiary hearing will be held to consider this issue further. The Court contemplates that the parties may introduce testimony on this issue, and give the Court an opportunity to compare the AR–15 Sporter and M–16 firsthand.

For the foregoing reasons, plaintiff's motion for summary judgment is DENIED. Defendants' summary judgment motion is GRANTED with respect to plaintiffs' bill of attainder claim, but is DENIED in all other respects. Plaintiffs' bill of attainder claim is DISMISSED.

It is so ORDERED.