**SPRINGFIELD ARMORY, INC., et al., Plaintiffs–Appellants,**

v.

**CITY OF COLUMBUS, et al., Defendants–Appellees.**

Nos. 92–4126, 92–4223.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 7, 1993.

Decided July 11, 1994.

Order Denying Rehearing Aug. 30, 1994.

---

Stephen P. Halbrook, Fairfax, VA (argued and briefed), Donald C. Brey (briefed), Geoffrey T. Kisor, Chester, Hoffman, Willcox & Saxbe, Columbus, OH, for plaintiffs-appellants.

Glenn B. Redick, City Atty's Office, Columbus, OH (argued and briefed), for defendants-appellees.

Theresa Rittinger Schaefer, Asst. Atty. Gen., (briefed), Jeffrey S. Sutton, Jones, Day, Reavis & Pogue, Columbus, OH (briefed), for State of Ohio, amicus curiae and Center To Prevent Handgun Violence, amicus curiae.

Before: MERRITT, Chief Judge; and NORRIS and SUHRHEINRICH, Circuit Judges.

MERRITT, Chief Judge.

Two manufacturers, a dealer and two potential purchasers of weapons challenge the constitutionality of a Columbus city ordinance that bans assault weapons. The ordinance defines "assault weapon" as any one of thirty-four specific rifles, three specific shotguns and nine specific pistols, or "[o]ther models by the same manufacturer with the same action design that have slight modifications or enhancements...." The weapons are specified by brand name and model, not generically or by defined categories.

Plaintiffs challenge the ordinance as an unconstitutional bill of attainder because it constrains only the named manufacturers while other manufacturers are free to make and sell similar products. Plaintiffs also contend that the ordinance is unconstitutionally vague. No equal protection claim is raised. The district court rejected the bill of attainder claim on a motion for summary judgment, 805 F.Supp. 489. It did not address the issue of facial validity but found it vague as applied to two of the weapons in question. We find the ordinance unconstitutionally vague on its face and therefore do not reach the bill of attainder issue.

\*    \*    \*    \*    \*    \*

The Supreme Court has stated very general standards for evaluating whether a statute is unconstitutionally vague:

Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them.

*Grayned v. Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972) (footnotes omitted). In addition, "[t]he requirement that government articulate its aims with a reasonable degree of clarity ensures that state power will be exercised only on behalf of policies reflecting an authoritative choice among competing social values ... and permits meaningful judicial review," *Roberts v. United States Jaycees,* 468 U.S. 609, 629, 104 S.Ct. 3244, 3256, 82 L.Ed.2d 462 (1984), but the Court has also said that a statute is void only if it is so vague that "no standard of conduct is specified at all." *Coates v. Cincinnati,* 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214 (1971).

At times the Court has suggested that a statute that does not run the risk of chilling constitutional freedoms is void on its

face only if it is impermissibly vague in all its applications, *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982), but at other times it has suggested that a criminal statute may be facially invalid even if it has some conceivable application. *Kolender v. Lawson*, 461 U.S. 352, 358–59 n. 8, 103 S.Ct. 1855, 1859 n. 8, 75 L.Ed.2d 903 (1983); *Colautti v. Franklin*, 439 U.S. 379, 394–401, 99 S.Ct. 675, 685–88, 58 L.Ed.2d 596 (1979). "The degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment." *Hoffman Estates*, 455 U.S. at 498, 102 S.Ct. at 1193. When criminal penalties are at stake, as they are in the present case, a relatively strict test is warranted. *Id.* at 499, 102 S.Ct. at 1193.

■ In the present case, the ordinance is fundamentally irrational and impossible to apply consistently by the buying public, the sportsman, the law enforcement officer, the prosecutor or the judge. The Columbus ordinance outlaws assault weapons only by outlawing certain brand names without including within the prohibition similar assault weapons of the same type, function or capability. The ordinance does not achieve the stated goal of the local legislature—to get assault weapons off the street. The ordinance purports to ban "assault weapons" but in fact it bans only an arbitrary and ill-defined subset of these weapons without providing any explanation for its selections. Many assault weapons remain on the market and the consumer is without a reasoned basis for determining which firearms are prohibited. The ordinance permits the sale and possession of weapons which are virtually identical to those listed if they are produced by a manufacturer that is not listed. Thus, the Springfield SAR–48 is banned but equivalent designs sold by Browning Arms Company, Paragon Sales and Armscorp are not. The Springfield BM59 is banned but the equivalent Be-

retta BM59 and BM62 are not banned. The Colt AR–15 Sporter is banned but not identical weapons sold by Bushmaster, SGW/Olympic Arms, Pac West Arms, Eagle Arms, Inc., Holmes Firearms, Frankford Arsenal and Essential Arms Company. The Ruger Mini–14 rifle, which shoots .223 caliber cartridges from a detachable box magazine just like the Colt AR–15 Sporter, is not prohibited. (App. 150, 153, 238).

The ordinance defines "assault weapon" simply by naming forty-six individual models of rifles, shotguns and pistols, listed by model name and manufacturer, and then adds within the prohibition

> other models by the same manufacturer with the same action design that have slight modifications or enhancements of firearms listed … provided the caliber exceeds .22 rimfire.

Columbus City Codes § 2323.01(I). No statement of purpose is added to the ordinance explaining the reason for outlawing some but not all assault weapons of the same type. Nor is there an explanation for drafting the ordinance in terms of brand name rather than generic type or category of weapon. Nor does the ordinance define "same action design" or "slight modifications." We do not know whether a "model by the same manufacturer" that fires twice as fast or twice as many bullets, or half as fast with half as many bullets, or some other combination of changes is a "slight modification" of the "same action design." [1]

Plaintiffs, gun manufacturers and dealers, say that they are unable to comprehend the meaning of the "slight modifications" provision or the purpose of the ordinance and hence cannot know in advance which sales the ordinance purports to prohibit. They argue that the ordinance does not adequately notify the citizenry regarding what conduct is prohibited and will necessarily give rise to arbitrary enforcement. The only clear restriction on the range of modifications which may be considered slight is that the caliber

---

**1.** There are several types of manual actions, such as the bolt and lever designs, which require some manual action to discharge the spent shell and reload a new one into the weapon's chamber. A semi-automatic weapon loads a new shell automatically. It requires a separate pull of the trigger for each shot fired and uses the energy of the discharge to reload. In contrast, a fully automatic weapon fires continuously until the magazine is emptied or the trigger is released. A selective fire weapon is capable of both semi-automatic and full automatic fire. *Glossary of the Association of Firearm and Toolmark Examiners* 1–2 (1980).

of a modified weapon must exceed .22. Does this mean that any other change in caliber is necessarily slight? What about the range of fire and the magazine capacity of a weapon? Is a doubling, tripling or halving of these measurements a slight modification? Because there is no discernable purpose underlying the slight modifications requirement, the reach of the provision defies definition.

How is the ordinary consumer to determine which changes may be considered slight? A weapon's accuracy, magazine capacity, velocity, size and shape and the caliber of ammunition it takes can all be altered. For example, the Colt Sporter Lightweight is a 5.56mm caliber weapon equipped with a 16 inch barrel, a 5-round magazine capacity, a 14.5 inch sight radius and weighs 6.7 lbs. (App. 266) If Colt modifies this weapon so that it takes a 9mm cartridge, has a 20 inch barrel, a 20-round magazine capacity, a 19.75 inch sight radius and weighs 10 lbs., would this new weapon be a slight modification? Or if these changes increase the weapon's range and accuracy so that it can shoot at twice the distance, or if a new trigger pull allows the operator to shoot twice as fast, or if Colt doubles the caliber of ammunition but halves the velocity at which the weapon fires the bullet, or if it modifies the gun so that it cannot accept a magazine capacity over 5 rounds? Suppose Colt changes so many of the external features of the weapon—adding a bipod, changing the pistol grip, the stock material, the color, the length and weight—that a person of ordinary intelligence would not, by merely looking at the weapon, be able to recognize any relationship between this modification and the original weapon. Would these changes be considered slight? We see no reasoned basis for making a determination one way or the other.

Even if the term "slight" did not render this provision void, the ordinance's "modifications" requirement would. In order for a difference to constitute a "modification" the weapon in question must have been developed from one of the listed firearms. A copy-cat weapon is only outlawed if it is developed from a listed weapon by a listed manufacturer. As the district court recognized, ordinary consumers cannot be expect-ed to know the developmental history of a particular weapon:

> Neither the M1 nor the M1A were developed from the BM59. Hence, neither ... could be said to represent firearms with "slight modifications or enhancements of the firearms listed," in this instance, the Springfield BM59.... The actions of these firearms are in many respects identical. Nevertheless, persons of ordinary intelligence would not know whether the subject ordinance bans the M1 or M1A. Only a person with knowledge of the history of these firearms would know that the M1 and M1A are not covered by the ordinance.

(App. 75). Nothing in the ordinance provides sufficient information to enable a person of average intelligence to determine whether a weapon they wish to purchase has a design history of the sort which would bring it within this ordinance's coverage. *See Robertson v. Denver*, 874 P.2d 325, 335 (Colo. 1994) (holding similar provision invalid because "ascertaining the design history and action design of a pistol is not something that can be expected of a person of common intelligence.") The record indicates that the average gun owner knows very little about how his gun operates or its design features.

These vagueness problems are not difficult to remedy. The subject matter does allow for more exactness. It is not a case in which greater specificity would interfere with practical administration. *See Kolender*, 461 U.S. at 361, 103 S.Ct. at 1860. To the contrary, Columbus has many options for effectively pursuing its stated goals without running afoul of due process. Other gun control laws which seek to outlaw assault weapons provide a general definition of the type of weapon banned, and the Columbus city council can do the same. See, e.g., Cleveland Ordinance No. 415–89 § 628.02 (banning semi-automatic rifles and pistols that accept a detachable magazine with capacity of 20 rounds or more and semi-automatic shotguns with a magazine capacity of more than 6 rounds); H.R. 4296 103rd Cong., 2nd Sess., § 2 (1994) (banning semi-automatic rifles, pistols and shotguns that can accept magazines of more than five rounds and that have at least two of a number of listed features).

■ Thus we conclude that the ordinance at issue is invalid on its face. The district court erred in failing to consider the facial validity of this ordinance and instead examined only the question of whether the ordinance was vague as applied to a number of specific weapons. In order to restrict its inquiry, the court relied on the Supreme Court's statement that "vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand," *United States v. Mazurie*, 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975). Nothing in *Mazurie* indicates that a facial challenge cannot succeed simply because constitutionally-protected activity is not imperiled. To the contrary, the Supreme Court has expressly stated that the question of whether or not a statute impinges on constitutionally-protected activity is but the first inquiry in a court's examination of a statute challenged on vagueness grounds. *Hoffman Estates*, 455 U.S. at 494, 102 S.Ct. at 1191. A court must also inquire whether the law has any valid application. *Id.* at 494–95, 102 S.Ct. at 1191–92. The district court never considered the question of whether or not a person of ordinary intelligence could make sense of this provision. Instead, it requested that plaintiffs produce the "other firearms" which they believed might be covered and evaluated the ordinance as applied to those weapons. After conducting an evidentiary hearing, the court found the ordinance void as applied to certain firearms and valid as applied to others, with no consideration of plaintiffs' facial challenge. This was an erroneous way to approach the vagueness problem in this case.

■ The final issue is the question of severability. The legislation does not include a severability clause. We have no way to know whether the local legislature would have enacted the assault weapons ban without the "slight modifications" provision. 2 Sutherland, Statutory Construction, § 44.03 (5th ed. 1992); *Williams v. Standard Oil Co. of Louisiana*, 278 U.S. 235, 241–44, 49 S.Ct. 115, 117–18, 73 L.Ed. 287 (1929); *City of New Haven, Connecticut v. U.S.*, 634 F.Supp. 1449, 1453–59 (D.D.C.1986). Apparently the city council simply copied the ordinance from a California ordinance. Here, the catch-all phrase is the only element that brings any generality to the measure. The provision seems integral to the ordinance since without it manufacturers could circumvent the ban by merely changing the names of the listed weapons. In view of the arbitrary nature of the ordinance and the historical presumption of inseverability in the absence of a severability clause, we conclude that we should not try to save the assault weapon portion of the ordinance but rather that we should leave it to the local legislature to draft another ordinance that does not suffer from the same defects as this one. 2 Sutherland, Statutory Construction, §§ 44.08, 44.09 (5th ed.1992); *Williams v. Standard Oil Co. of Louisiana*, 278 U.S. 235, 49 S.Ct. 115, 73 L.Ed. 287 (1929); *Carter v. Carter Coal Co.*, 298 U.S. 238, 56 S.Ct. 855, 80 L.Ed. 1160 (1936). Thus we hold the assault weapon provisions of the ordinance (§§ 1 and 2 of Ordinance No. 1226–89) invalid. The remaining provisions relating to large capacity magazines, weapons transactions and explosive devices remain unaffected by our decision.

Accordingly the judgment of the district court is reversed.

### ORDER OF DENIAL

#### August 31, 1994

The Court has read defendant's petition to rehear and the general Columbus City Code provision regarding severability. The Court regards the language invalidated in the assault weapons ordinance as integral to and a non-severable part of the ordinance. Having so found the Court declines to redact and sever words and phrases from the ordinance. *Dorchy v. State of Kansas*, 264 U.S. 286, 290, 44 S.Ct. 323, 325, 68 L.Ed. 686 (1924) (separations clause "is an aid merely; not an inexorable command."); 2 Sutherland, Statutory Construction, § 44.08 (5th ed. 1992) (existence of severability clause not dispositive). Such a redaction would make the ordinance even more irrational than it is now. Accordingly, the petition to rehear is denied.