[No. S055064. June 28, 2001.]

J. W. HARROTT, Plaintiff and Appellant, v.
COUNTY OF KINGS et al., Defendants and Respondents.

**COUNSEL**

John S. Dulcich for Plaintiff and Appellant.

Donald Kilmer; Trutanich Michel, C. D. Michel; Benenson & Kates and Don B. Kates for the National Rifle Association of America as Amicus Curiae on behalf of Plaintiff and Appellant.

Denis A. Eymil, County Counsel and William James Murphy, Deputy County Counsel, for Defendants and Respondents.

Morrison & Foerster, James P. Bennett, Barry R. Himmelstein; Dennis Henigan and Brian J. Siebel for Center to Prevent Handgun Violence, California Police Chiefs' Association, California State Sheriffs' Association, California Peace Officers' Association and City and County of San Francisco as Amici Curiae on behalf of Defendants and Respondents.

## OPINION

**BROWN, J.**—Mr. Harrott is an attorney. He received a gun collection in payment for legal services rendered to clients who had pleaded guilty to receiving stolen property. The Kings County Sheriff's Department, which was in possession of the gun collection, did not assert that one of the weapons, a semiautomatic rifle (the rifle), was stolen property, but nevertheless refused to deliver it to Mr. Harrott on the ground it was an assault weapon proscribed by the Roberti-Roos Assault Weapons Control Act of 1989 (Stats. 1989, ch. 19, § 3, p. 64; hereafter AWCA). Mr. Harrott brought this petition for writ of mandate to compel the sheriff's department to deliver the rifle to him. The trial court denied the writ, holding the rifle to be an assault weapon, and the Court of Appeal reversed. We granted review and held the case pending our decision in *Kasler v. Lockyer* (2000) 23 Cal.4th 472 [97 Cal.Rptr.2d 334, 2 P.3d 581] (*Kasler*).

In *Kasler, supra,* 23 Cal.4th 472, in the course of upholding the AWCA against various constitutional challenges, we summarized the statutory provisions that govern the question whether a semiautomatic firearm is considered an assault weapon. "Prior to amendment of the AWCA in 1999 (the 1999 amendments) (Stats. 1999, ch. 129, § 7 et seq.), semiautomatic firearms were designated as assault weapons by (1) being listed by type, series, and model in section 12276 [of the Penal Code], or (2) by being declared an assault weapon under a procedure set forth in section 12276.5. Under the latter procedure, which is commonly referred to as the add-on provision, certain superior courts, upon petition by the Attorney General, may be called upon to declare a firearm an assault weapon because of its essential similarity to a listed assault weapon. With its 1999 amendments to the AWCA, the Legislature took a third approach to designating assault weapons—defining

them in section 12276.1, subdivision (a) in terms of generic characteristics, for example, a 'semiautomatic, centerfire rifle that has the capacity to accept a detachable magazine' and also has a 'pistol grip that protrudes conspicuously beneath the action of the weapon.' (*Id.*, subd. (a)(1)(A), Stats. 1999, ch. 129, § 7.) It bears repeating that the 1999 amendments were additive in this respect. Neither the list method of designating assault weapons in section 12276 nor the add-on provision of section 12276.5 was abandoned or textually modified by the 1999 amendments." (*Kasler*, at pp. 477-478.)

In order to frame the question before us, we must be clear about what the trial court did *not* hold. First, because this case was tried prior to the adoption of the 1999 amendments, the trial court did *not* decide the rifle belonging to Mr. Harrott was an assault weapon under Penal Code section 12276.1.[1] Second, the trial court did *not* declare the rifle an assault weapon under the add-on provision of section 12276.5. The court did not purport to do so, and it would not have had the authority to do so, because the Kings County Superior Court is not one of the superior courts designated in section 12276.5, subdivision (a) (superior courts "of a county with a population of more than 1,000,000"). Moreover, the Attorney General had not filed the petition called for by that section. Finally, the trial court did *not* find the rifle to be one of the models specifically listed in section 12276.[2] Rather, the trial court declared the rifle to be an assault weapon on the ground it was an "AK series" weapon under section 12276, subdivisions (a)(1)(A) and (e). The court found that the differences between Mr. Harrott's rifle and one of the Chinese-made AK models specifically listed in section 12276, subdivision (a)(1)(A)—the AK47S—were only "minor," thus satisfying the test for a " 'series' " weapon stated in subdivision (e) of section 12276.[3]

There are two more statutory provisions that are critical to the framing of the issue in this case: Section 12276.5, subdivision (g) provides the Attorney

[1] Unless otherwise indicated, all further section references are to the Penal Code.

[2] Interestingly, in his petition for writ of mandate, Mr. Harrott identified the rifle as an "AK-47 2822," and the "AK47" *is* one of the models of assault weapons specifically listed in section 12276, subdivision (a)(1)(A). However, the hearing below proceeded on the assumption that the rifle was *not* one of the models specifically listed in section 12276, subdivision (a). In a final twist, the Attorney General, in an amicus curiae brief filed in this court, asserts for the first time that the rifle *is* an assault weapon specifically listed in section 12276, subdivision (a)(1)(A), namely, a "[m]ade in China . . . AK47 . . . ."

[3] The term *series* is used in section 12276 with respect to only two types of semiautomatic firearms, both of which are rifles: the "AK series" at issue here (§ 12276, subd. (a)(1)) and the "Colt AR-15 series" (§ 12276, subd. (a)(5)).

Section 12276, subdivision (a)(1) provides: "As used in this chapter [the AWCA], 'assault weapon' shall mean the following designated semiautomatic firearms: [¶] (a) All of the following specified rifles: [¶] (1) All AK series including, but not limited to, the models identified as follows: [¶] (A) Made in China AK, AKM, AKS, AK47, AK47S, 56, 56S, 84S,

General "shall prepare a description for identification purposes, including a picture or diagram, of each assault weapon listed in Section 12276, and any firearm declared to be an assault weapon pursuant to this section, and shall distribute the description to all law enforcement agencies responsible for enforcement of this chapter." Section 12276.5, subdivision (h) directs the Attorney General to "promulgate a list that specifies all firearms designated as assault weapons in Section 12276 or declared to be assault weapons pursuant to this section. The Attorney General shall file that list with the Secretary of State for publication in the California Code of Regulations."

The California Department of Justice criminalist called by the County of Kings (County) testified the rifle was *not* in his opinion an AK series weapon. He reasoned as follows: Pursuant to section 12276.5, subdivision (g), the Attorney General had prepared an assault weapons identification guide (Cal. Atty. Gen., Assault Weapons Identification Guide (1993); hereafter Identification Guide) setting out each of the assault weapons listed in section 12276, as well as the firearms declared to be assault weapons pursuant to section 12276.5. The Identification Guide designated the AK series weapons by their *manufacturers' markings*. The markings on this rifle did not match any of the markings in the Identification Guide. Therefore, the rifle was not an assault weapon. The expert called by Mr. Harrott reached the same conclusion on the same grounds.

Nevertheless, the trial court held the rifle was an AK series weapon, and thus, an assault weapon. It did so on the theory that the ultimate legal question as to whether the rifle was an AK series weapon was a question for the court, not the Attorney General, to decide. The test to be applied by the decision maker is set out in subdivision (e) of section 12276: "The term 'series' includes all other models that are only variations, with minor differences, of those models listed in subdivision (a), regardless of the manufacturer." That test was satisfied here, the trial court found, because the criminalist called by the County conceded that any variations between this rifle and an AK reference weapon (the AK 47S) were only minor.

 The question presented by this case, therefore, is whether the superior court had the authority to declare Mr. Harrott's rifle an AK series assault weapon under section 12276, subdivisions (a)(1)(A) and (e) when it had not been identified as such in the Identification Guide published by the

and 86S. [¶] (B) Norinco 56, 56S, 84S, and 86S. [¶] (C) Poly Technologies AKS and AK47. [¶] (D) MAADI AK47 and ARM."

Section 12276, subdivision (e) provides: "The term 'series' includes all other models that are only variations, with minor differences, of those models listed in subdivision (a), regardless of the manufacturer."

Attorney General pursuant to section 12276.5, subdivision (g), and had not been included in the list of assault weapons promulgated by the Attorney General pursuant to section 12276.5, subdivision (h).

We conclude the answer to this question is *no*, for reasons well stated by the Court of Appeal in reversing the judgment of the trial court. "The legislative history of the amendments to the [AWCA] reveals strong concern that law enforcement personnel be clearly advised which firearms are 'assault weapons' within the meaning of the [AWCA] so as to prevent erroneous confiscation of legal weapons. The Legislature's concern that such a list be current and completely inclusive is demonstrated by the requirement that when a firearm has been declared to be an assault weapon pursuant to a section 12276.5 proceeding, the Attorney General's list must be amended within 90 days to include the specified firearm. There is no corresponding provision that if a trial court independently declares a firearm to be an assault weapon, it must notify the Attorney General. Since decisions of the trial court are not published, if we were to read the [AWCA] as urged by the county, the Legislature's purpose in mandating promulgation of a complete and current list would be thwarted. Without notice to the Attorney General, any trial court could, at any time, declare firearms to be assault weapons, thereby rendering the Attorney General's list obsolete and frustrating the intent of the Legislature."

Moreover, the Court of Appeal noted, "the Attorney General's list [must] be complete and accurate . . . . [because] [s]ection 12280, subdivision (b) makes it a crime to possess a firearm which has been designated . . . an assault weapon unless it has been registered. . . . [W]ere trial courts independently authorized to declare additional firearms to be assault weapons without the participation of or notice to the Attorney General, the likelihood the list would be incomplete is substantially increased. Thus, ordinarily law-abiding citizens could suddenly find themselves in violation of the [AWCA] and subject to prosecution despite having periodically checked the Attorney General's list and reviewed section 12276, subdivision (a) to ensure their firearms had not been declared . . . assault weapons."

The reasoning of the Court of Appeal was validated by our subsequent decision in *In re Jorge M.* (2000) 23 Cal.4th 866 [98 Cal.Rptr.2d 466, 4 P.3d 297] (*Jorge M.*). In *Jorge M.*, we considered the question whether the offense of possession of an unregistered assault weapon (§ 12280, subd. (b)) "can properly be categorized as a public welfare offense, for which the Legislature intended guilt without proof of any scienter." (*Jorge M.*, at p. 872.) We concluded that in a prosecution for this offense, "the People bear the burden of proving the defendant knew or reasonably should have known the firearm

possessed the characteristics bringing it within the AWCA." (*Id.* at p. 887, italics & fn. omitted.) In reaching this conclusion, we considered seven factors "courts have commonly taken into account in deciding whether a statute should be construed as a public welfare offense." (*Id.* at p. 873.) One of these factors is the *difficulty of ascertaining facts.* "This interpretive guideline holds with particular strength when the characteristics that bring the defendant's conduct within the criminal prohibition may not be obvious to the offender." (*Id.* at p. 881.)

As was mentioned above, prior to its amendment in 1999, the AWCA did not define *assault weapons* generically. In 1989, when the AWCA was originally enacted, the Legislature was sharply divided, and if the proponents of the legislation had insisted upon a generic definition, the bill would apparently have died in the Assembly that session. (*Kasler, supra,* 23 Cal.4th at p. 487.) Recognizing that the perfect can be the enemy of the good, the Legislature compromised and enacted an admittedly imperfect bill under which "semiautomatic firearms were designated as assault weapons by (1) being listed by type, series, and model in section 12276, or (2) by being declared an assault weapon under a procedure set forth in section 12276.5." (*Kasler,* at pp. 477-478.) As a result, anomalous situations could arise. That is, prior to the amendment of the AWCA in 1999, two semiautomatic firearms made by different manufacturers, or two different models made by the same manufacturer, could be virtually identical in appearance, and yet one might be banned while the other is not. In *Jorge M.,* we recognized it could be difficult to ascertain whether a semiautomatic firearm has the characteristics making it an assault weapon under the AWCA as originally enacted. "The Attorney General maintains the weapons listed in section 12276 are 'highly dangerous offensive weapons which are unambiguously hazardous. Assault weapons are typically used by soldiers in a war. . . . The assault weapons listed in section 12276, like the SKS with detachable magazine, are not "ambiguous substances" such that a person would not be aware of the dangerous character of the weapon after looking at one.' The minor, in contrast, again stresses that the AWCA restricts only a subset of semiautomatic firearms, leaving the remainder available for lawful uses such as hunting and target shooting, and that even those semiautomatic firearms classified as assault weapons may, if registered, be lawfully possessed and used for these purposes. (See § 12285, subd. (c).) [¶] On this point the minor has the better argument. . . . [¶] As to whether the possessor of a weapon listed in section 12276 would, in all or most cases, 'be aware of the dangerous character of the weapon after looking at one,' the Attorney General does not demonstrate, or even attempt to demonstrate, that the listed weapons are universally distinguishable by their appearance from firearms not listed in section 12276. Comparison of the photographs of listed rifles in

the [Identification Guide] with photographs of unlisted rifles in a general reference work (Walter, Rifles of the World [(2d ed. 1998)]) fails to bear out the assumption. While many of the rifles depicted in the Identification Guide are of particularly menacing appearance, with folding or telescoping stocks, forward pistol grips, bullpup configuration or other unusual external features, others, with fixed wooden stocks and a relatively conventional rifle appearance, are not obviously unsuited, to the untrained eye at least, for hunting, ranching and farming uses, or target shooting. (See, e.g., Identification Guide at pp. 6 [Baretta AR-70], 7 [CETME Sporter], 18 [SKS with detachable magazine], 23 [Springfield Armory BM 59], 26 [Valmet M62S], 28 [Valmet M78S].) Conversely, several unlisted semiautomatic rifles have unusual military-type features and appear, again to the untrained eye, unlikely sporting or working guns. (See, e.g., Walter, Rifles of the World, *supra*, at pp. 384 [PMC Paratrooper], 404 [Ruger Mini-14/5RF], 442 [Universal Paratrooper], 439 [Stoner Model 63A1].)" (*Jorge M., supra*, 23 Cal.4th at pp. 882-883.)

Two points made in our discussion in *Jorge M.* bear significantly on the question before us now: (1) In order to determine whether a firearm is an assault weapon under the AWCA, an ordinary citizen will have to rely heavily on the markings listed in the Identification Guide; and (2) even after consulting the Identification Guide, the ordinary citizen may still not be able to determine whether the firearm is considered an assault weapon. "[W]e observe that section 12276 lists weapons primarily by manufacturer and model. 'Accordingly, the identification markings are the most important factor in determining if a particular firearm is an "assault weapon" ' within the meaning of section 12276. (Identification Guide, *supra*, Foreword.) Yet the Identification Guide also suggests markings may vary from gun to gun: 'Department of Justice staff has attempted to locate examples of each of the identified "assault weapons" to identify accurately the markings on them. However, some of the identified "assault weapons" were not physically located and some which were found were not marked as specified in Section 12276.' (Identification Guide, *supra*, Foreword.) Accompanying the Identification Guide's photograph of a Valmet M78S (listed in § 12276, subd. (a)(16)) is the note, 'No firearm marked **M78S** has been located. However, the firearm pictured may be the **M78S**.' A similar note accompanies the photograph of a SIG PE-57 (listed in § 12276, subd. (a)(12)). (Identification Guide, *supra*, at pp. 20, 28.) Consequently, although most firearms listed in section 12276 are likely to be readily identifiable, some instances in which the possessor of a semiautomatic firearm could reasonably be in doubt as to whether the weapon is subject to regulation under the AWCA are also likely." (*Jorge M., supra*, 23 Cal.4th at p. 884.)

This case amply illustrates the difficulty an ordinary citizen might have, when a gun's markings are not listed in the Identification Guide, in determining whether a semiautomatic firearm should be considered an assault

weapon under the AWCA.[4] Perhaps the grossest feature of the rifle belonging to Mr. Harrott, its stock, was dissimilar to the AK series reference weapon, while features that might be familiar only to a gun buff, such as the "sear,"[5] were interchangeable with those of the reference weapon, and still others, such as the "receiver cover,"[6] were not.

Moreover, as the amicus curiae brief filed in support of Mr. Harrott by the National Rifle Association (NRA) points out, the authority claimed by the trial court here—to hold a firearm to be an assault weapon under section 12276, even though its markings do not appear in the Identification Guide—could lead to the same weapon being treated differently from county to county and even within the same county. "[T]he course taken by the Sheriff and the Kings County Superior Court would substitute chaos for the AWCA's plan of uniform, statewide determinations of which guns are [assault weapons]. If allowed to stand, the trial court decision in *Harrott* would subject California's gun owners, particularly hunters, to whimsical and capricious prosecution. Kern County might have no problem with a particular firearm, but a single judge in Kings County could turn a truly innocent citizen . . . into a felon. A hunter who left Kern (where a Clayco rifle is completely legal) to hunt in Kings County could be arrested and prosecuted for the minimum four-year sentence felony of transporting an

---

[4]Not only would ordinary citizens find it difficult, without the benefit of the Identification Guide, to determine whether a semiautomatic firearm should be considered an assault weapon, ordinary law enforcement officers in the field would have similar difficulty. While we do not rely on the individual views of proponents of legislation in interpreting a statute (see, e.g., *Quintano v. Mercury Casualty Co.* (1995) 11 Cal.4th 1049, 1062, fn. 5 [48 Cal.Rptr.2d 1, 906 P.2d 1057]), we note that the author of the legislation that requires the Attorney General to produce the Identification Guide recognized this difficulty. "I am writing to request your signature on SB 2444 which would enable law enforcement personnel in the field the means to be able to recognize what actually is or is not an 'assault weapon,' as defined under state law. [¶] Unfortunately, a great many law enforcement officers who deal directly with the public are not experts in specific firearms identification. . . . [¶] There are numerous makes and models of civilian military-looking semi-automatic firearms which are not listed by California as 'assault weapons' but which are very similar in external appearance. This situation sets the stage for honest law-enforcement mistakes resulting in unjustified confiscations of non-assault weapon firearms. Such mistakes, although innocently made, could easily result in unnecessary, time-consuming, and costly legal actions both for law enforcement and for the lawful firearms owners affected. [¶] SB 2444 will benefit everyone concerned by assuring that law enforcement officers are assisted in the proper performance of their duties through having at their disposal a reliable means of accurately identifying each listed 'assault weapon.' " (Sen. Don Rogers, letter to Governor Deukmejian re: Sen. Bill No. 2444 (1989-1990 Reg. Sess.) Aug. 23, 1990.)

[5]A *sear* is "the catch that holds the hammer of a gunlock at cock or half cock." (Webster's 3d New Internat. Dict. (1965) p. 2048.)

[6]A *receiver* is "the metal frame in which the action of a firearm is fitted and to which the breech end of the barrel is attached." (Webster's 3d New Internat. Dict., *supra*, at p. 1894.)

'assault weapon' under section 12280, subdivision (a)."[7] Trial court decisions are not precedents binding on other courts under the principle of stare decisis. (*Santa Ana Hospital Medical Center v. Belshé* (1997) 56 Cal.App.4th 819, 831 [65 Cal.Rptr.2d 754]; 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 922, p. 960.) Therefore, as the NRA notes, "the trial court decision in *Harrott* binds only the parties thereto—even in Kings County. If the exact same situation arose again in some other county (or even in Kings), a Clayco owner would be free to bring suit to compel the police to give him his Clayco. While the superior court in which he brought it *could* follow the *Harrott* superior court, it would not have to. It would be free to reach the opposite conclusion—either by examining the merits for itself or by accepting as binding the Attorney General's list of AK series guns which does not include the Clayco." (Fn. omitted.)

Moreover, the NRA argues, just as the Kings County Superior Court had no authority to pronounce Mr. Harrott's rifle an AK series assault weapon under section 12276, subdivision (e), the Attorney General also lacks the authority to identify series weapons under that provision. Such a determination, the NRA contends, could only be made in a section 12276.5 add-on proceeding brought by the Attorney General in one of the courts designated in that section. The Attorney General, on the other hand, contends we have already upheld his authority under section 12276, subdivision (e). "The *Kasler* decision has affirmed the Attorney General's authority to identify assault weapons with both the add-on provisions of . . . section 12276.5 *and identify the 'series' AK and AR-15 assault weapons pursuant to . . . section 12276[, subdivisions] (e) and (f).*" (Cal. Dept. of Justice, Firearms Div. Information Bull. No. 2000-04-FD (Aug. 22, 2000) p. 1, italics added, at <http://caag.state.ca.us/firearms/infobuls/200004.pdf> [as of June 28, 2001].)

Although both the NRA and the Attorney General profess to find support for their positions in *Kasler*, in that opinion we expressly declined to reach the question of the Attorney General's authority under section 12276, subdivisions (e) and (f). "Because we have concluded that plaintiffs' equal protection challenge must be rejected even if, as plaintiffs contend, section 12276 covers only the specific makes and models listed in that provision, we need not reach the Attorney General's argument that the challenge is based on a misreading of the AWCA. '[Plaintiffs'] basic premise that various weapons allegedly identical in design produced by different manufacturers

---

[7] "Clayco" is a brand name used by the Court of Appeal to refer to Mr. Harrott's rifle. We have avoided using the term because the Attorney General asserts that "Clayco" is the name, not of a manufacturer, but of an importer of semiautomatic firearms made by Norinco, a Chinese manufacturer of AK series assault weapons.

were not included by [the] Legislature is defeated by the plain language of the statute,' the Attorney General contends, because subdivision (f) of section 12276 states that the list includes 'any other models which are only variations of those weapons with minor differences regardless of manufacturer.' " (*Kasler, supra*, 23 Cal.4th at p. 491, fn. 2.)

There is an apparent tension between the authority conferred upon the Attorney General by section 12276.5, subdivision (a)—the power to initiate a *judicial* proceeding to add assault weapons to the list of such weapons in section 12276,[8] and the authority conferred upon the Attorney General by section 12276, subdivision (e)—the power, in the absence of a judicial proceeding, to identify and promulgate a list of the firearms considered to be *series* assault weapons. The tension, however, is only apparent, and we uphold the Attorney General's authority.

Our decision today—upholding the Attorney General's authority to identify series assault weapons pursuant to section 12276, subdivision (e), but holding that a trial court may not find a semiautomatic firearm a series assault weapon under section 12276, subdivision (e), unless the firearm has first been included in the list of series assault weapons promulgated by the Attorney General pursuant to section 12276.5, subdivision (h)—is compelled by our examination of the legislative history of the AWCA.

As the AWCA was originally enacted in 1989, section 12276 did not contain subdivision (e). (Stats. 1989, ch. 19, § 3, pp. 64-65.) In 1991, the AWCA was amended by, inter alia, adding subdivision (e) to section 12276, as well as subdivision (h) to section 12276.5. (Stats. 1991, ch. 954, §§ 2-3, pp. 4440-4443.) Subdivision (e) of section 12276 provides that *series* includes "all other models that are only variations, with minor differences, of

---

[8]Under section 12276.5, certain superior courts, upon a request by the Attorney General, may declare a firearm an assault weapon "(a) . . . because the firearm is either of the following: [¶] (1) Another model by the same manufacturer or a copy by another manufacturer of an assault weapon listed in subdivision (a), (b), or (c) of Section 12276 which is identical to one of the assault weapons listed in those subdivisions except for slight modifications or enhancements including, but not limited to: a folding or retractable stock; adjustable sight; case deflector for left-handed shooters; shorter barrel; wooden, plastic or metal stock; larger magazine size; different caliber provided that the caliber exceeds .22 rimfire; or bayonet mount. The court shall strictly construe this paragraph so that a firearm which is merely similar in appearance but not a prototype or copy cannot be found to be within the meaning of this paragraph. [¶] (2) A firearm first manufactured or sold to the general public in California after June 1, 1989, which has been redesigned, renamed, or renumbered from one of the firearms listed in subdivision (a), (b), or (c) of Section 12276, or which is manufactured or sold by another company under a licensing agreement to manufacture or sell one of the firearms listed in subdivision (a), (b), or (c) of Section 12276, regardless of the company of production or distribution, or the country of origin."

those models listed in subdivision (a), regardless of the manufacturer."[9] Subdivision (h) of section 12276.5 provides in pertinent part: "The Attorney General shall promulgate a list that specifies all firearms designated as assault weapons in Section 12276 or declared to be assault weapons pursuant to this section. The Attorney General shall file that list with the Secretary of State for publication in the California Code of Regulations."

When the AWCA was originally enacted, the Legislature clearly intended to reach all series assault weapons. In amending section 12276 to add subdivision (e), the Legislature articulated the standard under which the Attorney General was to *administratively* identify the semiautomatic firearms considered to be series assault weapons. And importantly, by also amending section 12276.5 to add subdivision (h), we agree that the Legislature, in the words of the author of the bill, provided "additional due process protections for public notification purposes." (Sen. David Roberti, letter to Governor Wilson re: Sen. Bill No. 263 (1991-1992 Reg. Sess.) Sept. 19, 1991, p. 2.) The fact these amendments were enacted together supports the conclusion that subdivision (e) of section 12276 is not self-executing, but, rather, that the specific make and model of an assault weapon must first appear on the list the Attorney General, pursuant to section 12276.5, subdivision (h), files with the Secretary of State for publication in the California Code of Regulations.

This construction is consistent with one of the Legislature's primary purposes in amending the AWCA in 1991, which was to promote compliance with the requirement of section 12285 that assault weapons be registered. In its earlier iterations, Senate Bill No. 263 only (1) established a registration forgiveness period affording owners who did not comply with the original registration requirement another opportunity, and (2) required the Department of Justice to conduct a public education program regarding the registration requirement. (See Sen. Bill No. 263 (1991-1992 Reg. Sess.) as amended Feb. 11, 1991.) According to a Senate Judiciary Committee report, the Attorney General sought the bill because of very poor compliance with the original January 1, 1991, registration deadline. "[C]onsidering the fact that the great majority of gun owners are law abiding citizens, regardless of their opinion of a particular law, it is unlikely that a 90% rate of

---

[9]As amended in 1991, section 12276 now provides that the term *assault weapon* means all of the rifles specified in subdivision (a), as well as all of the pistols and shotguns specified in subdivisions (b) and (c), respectively. Subdivision (a) of section 12276 lists the specified rifles in 21 numbered subdivisions, beginning with "(1) All AK series including, but not limited to, the models identified as follows: [¶] (A) Made in China AK, AKM, AKS, AK47, AK47S, 56, 56S, 84S, and 86S. [¶] (B) Norinco 56, 56S, 84S, and 86S. [¶] (C) Poly Technologies AKS and AK47. [¶] (D) MAADI AK47 and ARM." (Stats. 1991, ch. 954, § 2, p. 4440.)

noncompliance can [be] explained as a concerted political statement. Far more likely is the possibility that owners of assault weapons were simply unaware of the deadline, *or unaware that their particular weapons were included on the list of proscribed firearms*." (Sen. Com. on Judiciary, Rep. on Sen. Bill No. 263 (1991-1992 Reg. Sess.) p. 3, italics added.) "The low rate of compliance evident at the time of the registration deadline led the Attorney General to suggest an extension permitting lawful compliance, on the grounds that *no public interest is served by punishing a large class of individuals for failure to perform due to insufficient disclosure of the law. Certainly, respect for the law is not served by the punishment of individuals lacking an opportunity to know its terms and conditions.* Thus, some additional opportunity for compliance, accompanied by a genuine education effort, seems reasonable." (*Id.* at p. 4, italics added.)

Our construction of the statute, holding that a trial court may not find a semiautomatic firearm to be a series assault weapon under section 12276, subdivision (e), unless the firearm has first been included in the list of series assault weapons promulgated by the Attorney General pursuant to section 12276.5, subdivision (h), best serves the legislative goal we have just described. A contrary interpretation would be inconsistent with the legislative goal because owners of unlisted weapons would still be unsure whether they had to comply with the registration requirement.

██ Our interpretation of section 12276, subdivision (e) is reinforced by the rule that a statute must be interpreted in a manner, consistent with the statute's language and purpose, that eliminates doubts as to the statute's constitutionality. (*Hughes v. Board of Architectural Examiners* (1998) 17 Cal.4th 763, 788 [72 Cal.Rptr.2d 624, 952 P.2d 641].) "A law failing to give a person of ordinary intelligence a reasonable opportunity to know what is prohibited violates due process under both the federal and California Constitutions. (*Grayned v. City of Rockford* (1972) 408 U.S. 104, 108 [92 S.Ct. 2294, 2298, 33 L.Ed.2d 222]; *People v. Heitzman* (1994) 9 Cal.4th 189, 199 [37 Cal.Rptr.2d 236, 886 P.2d 1229].)" (*Kasler, supra,* 23 Cal.4th at pp. 498-499.)

██ Ordinary gun owners of reasonable intelligence, Mr. Harrott contends, cannot be expected to know whether the differences between their semiautomatic firearms and the assault weapons specifically listed in section 12276, subdivision (a) are, in the language of section 12276, subdivision (e), only "minor." However, our interpretation of the AWCA avoids this problem. To determine whether the differences between their firearms and the series assault weapons listed in section 12276 are considered to be only "minor," gun owners need only consult the California Code of Regulations.

Mr. Harrott relies upon *Springfield Armory, Inc. v. City of Columbus* (6th Cir. 1994) 29 F.3d 250 (*Springfield Armory*), in which the Sixth Circuit Court of Appeals found the City of Columbus's assault weapon ordinance unconstitutionally vague. "The ordinance defines 'assault weapon' as any one of thirty-four specific rifles, three specific shotguns and nine specific pistols, or '[o]ther models by the same manufacturer with the same action design that have *slight modifications or enhancements.* . . .' " (*Id.* at p. 251, italics added.) "How is the ordinary consumer to determine which changes may be considered slight?" the Sixth Circuit asked. "A weapon's accuracy, magazine capacity, velocity, size and shape and the caliber of ammunition it takes can all be altered." (*Id.* at p. 253.)

In *Kasler*, the Court of Appeal relied upon *Springfield Armory, supra,* 29 F.3d 250, in holding section 12276.5 unconstitutionally vague. "Section 12276.5 violates [the standard that a law should give a person of ordinary intelligence an opportunity to know what is prohibited], the Court of Appeal held, 'because it defines the weapons which can be added on as those with "slight" modifications and those which have been "redesigned, renamed, or renumbered" from guns on the list. (§ 12276.5, subd. (a)(1), (2).) Reasonable persons can understand renaming and renumbering. But what is a "slight" modification or a "redesign?" ' " (*Kasler, supra,* 23 Cal.4th at p. 499.)

"The questions raised by the Court of Appeal in *Kasler,*" we pointed out, "are not questions ordinary citizens must answer at their peril. Rather, they are questions the Attorney General must address in deciding whether to petition the superior court for a declaration of temporary suspension (§ 12276.5, subd. (a)), and that the superior court must resolve in determining whether to issue a permanent declaration that a firearm is an assault weapon (§ 12276.5, subd. (f)). If the superior court issues a permanent declaration that a specified firearm is an assault weapon, then the Attorney General must, within 90 days, promulgate an amended list of the firearms designated as assault weapons in section 12276, or added to the list pursuant to section 12276.5, and the amended list must be filed by the Attorney General with the Secretary of State for publication in the California Code of Regulations. (§ 12276.5, subd. (h).) Therefore, concerned citizens need not struggle with the question whether, for example, a particular firearm is identical to one of the listed assault weapons except for slight modifications. The citizens may simply consult the amended list. (The availability of the amended list distinguishes the cases upon which the Court of Appeal relied in holding the AWCA unconstitutionally vague—*Springfield Armory, supra,* 29 F.3d 250, and *Robertson v. City and County of Denver* (Colo. 1994) 874 P.2d 325 [29 A.L.R.5th 837].) Because the standard set forth in section 12276.5, subdivision (a), is to be applied by the Attorney General and the

superior court, we need not and do not reach the question whether it would be unconstitutionally vague if ordinary citizens were required to apply it." (*Kasler, supra,* 23 Cal.4th at p. 499.)

Just as the questions raised by the Court of Appeal in *Kasler*—what is a "slight" modification or a "redesign[]" within the meaning of section 12276.5, subdivision (a)(1) and (2)?—are not questions ordinary citizens have to answer at their peril, so, too, ordinary citizens are not held responsible for answering the question raised by Mr. Harrott—which differences are only "minor" within the meaning of section 12276, subdivision (e)? As we have interpreted the statute, to determine whether the differences between the firearms of concern to them and the series assault weapons listed in section 12276 are considered by the Attorney General to be only "minor" for the purposes of section 12276, subdivision (e), ordinary citizens need only consult the California Code of Regulations. Moreover, the Attorney General's Identification Guide is also available to them.

On the other hand, we reject the argument that a saving construction is unnecessary because the statute is applicable, not only to ordinary gun owners, but also to gun dealers, and the latter should be able to apply section 12276, subdivision (e)'s standard regarding "minor" differences with reasonable certainty. This argument is based on a false premise. The premise is that we adopt a saving construction only if a statute would otherwise be unconstitutional on its face, that is, in *all* its applications. This premise is simply wrong. ■ " 'If a statute is susceptible of two constructions, one of which will render it constitutional and the other unconstitutional in whole or in part, or raise serious and doubtful constitutional questions, the court will adopt the construction which, without doing violence to the reasonable meaning of the language used, will render it valid in its entirety, or free from doubt as to its constitutionality, even though the other construction is equally reasonable. [Citations.] The basis of this rule is the presumption that the Legislature intended, not to violate the Constitution, but to enact a valid statute within the scope of its constitutional powers.' [Citations.]" (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 509 [53 Cal.Rptr.2d 789, 917 P.2d 628].) ■ It can hardly be argued that this statute does not raise serious and doubtful constitutional questions as applied to ordinary citizens. The language found constitutionally problematic by the Sixth Circuit Court of Appeals in *Springfield Armory, supra,* 29 F.3d 250, and by the Colorado Supreme Court in *Robertson v. City and County of Denver, supra,* 874 P.2d 325, was more specific than the language at issue here. (See *Springfield Armory, supra,* 29 F.3d at p. 252 ["other models by the same manufacturer with the same action design that have slight modifications or

enhancements of firearms listed"]; *Robertson v. City and County of Denver, supra,* 874 P.2d at p. 334 [" '[a]ll semiautomatic pistols that are modifications of rifles having the same make, caliber and action design but a shorter barrel and no rear stock or modifications of automatic weapons originally designed to accept magazines with a capacity of twenty-one (21) or more rounds' "].)

Our construction of this statute to preserve its constitutionality is supported by the related rule of lenity. The latter rule applies even though this is not a criminal prosecution because the statute we are construing imposes criminal penalties. ■ "In determining the meaning of [a] statute, we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy. [Citations.] Moreover, [when] the governing standard is set forth in a criminal statute, it is appropriate to apply the rule of lenity in resolving any ambiguity in the ambit of the statute's coverage. To the extent that the language or history of [a statute] is uncertain, this 'time-honored interpretive guideline' serves to ensure both that there is fair warning of the boundaries of criminal conduct and that legislatures, not courts, define criminal liability. [Citations.]" (*Crandon v. United States* (1990) 494 U.S. 152, 158 [110 S.Ct. 997, 1001-1002, 108 L.Ed.2d 132]; see also *United States v. Thompson/Center Arms Co.* (1992) 504 U.S. 505, 517-518 [112 S.Ct. 2102, 2109-2110, 119 L.Ed.2d 308] [applying the rule of lenity in a federal firearms case involving a tax, not a criminal penalty].)

■ Finally, our construction of the AWCA—that a trial court may not find a firearm a series assault weapon unless it has been first identified as such in the list published by the Attorney General in the California Code of Regulations—comports with the Attorney General's own construction of the statute. The Attorney General has never supported the trial court's assertion of authority to find Mr. Harrott's rifle an AK series assault weapon. In the brief amicus curiae filed in this court, the Attorney General insists upon his exclusive authority to determine which firearms are series assault weapons. "Series firearms . . . have to be specified in a list promulgated by the Attorney General, filed with the Secretary of State and published in the California Code of Regulations pursuant to section 12276.5, subdivision (h)." The testimony of the California Department of Justice criminalist called by the County was consistent with the Attorney General's position in that the criminalist testified that the rifle was *not* in his opinion an AK series weapon because its markings did not match any of the markings listed in the Identification Guide. ■ "[B]oth this court and the United States Supreme Court have recognized on numerous occasions that '[t]he construction

of a statute by the officials charged with its administration must be given great weight.' " (*Highland Ranch v. Agricultural Labor Relations Bd.* (1981) 29 Cal.3d 848, 859 [176 Cal.Rptr. 753, 633 P.2d 949].) ■ It is particularly appropriate to do so here because of (1) the technical knowledge required to ascertain whether which weapons are knockoffs or clones of listed assault weapons, and (2) the importance, as the Court of Appeal pointed out, of avoiding conflicting rulings by various trial courts. (See *Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7 [78 Cal.Rptr.2d 1, 960 P.2d 1031] ["[T]he binding power of an agency's *interpretation* of a statute or regulation is contextual: Its power to persuade is both circumstantial and dependent on the presence or absence of factors that support the merit of the interpretation."].)

■ The limits of our holding today warrant emphasis. Although we hold the Attorney General has the authority to determine that certain semiautomatic firearms are assault weapons by simply identifying them as such in the list published by the Attorney General in the California Code of Regulations, that authority applies only to the two types of firearms defined in section 12276 by the use of the term *series*, namely, the AK47 series and the Colt AR-15 series. (See fn. 3, *ante*.) In order to have any other semiautomatic firearms declared assault weapons within the meaning of section 12276, the Attorney General must utilize the add-on procedure set forth in section 12276.5. And, of course, the Attorney General's identification of a particular firearm as a series assault weapon would, in an appropriate case, be subject to challenge on the ground the firearm in question did not satisfy the standard set forth in section 12276, subdivision (e), namely that the variations between it and the AK47 series or the Colt AR-15 series were more than "minor."

■ Our conclusion that the trial court exceeded its authority in declaring Mr. Harrott's rifle an AK series weapon under section 12276, subdivisions (a)(1)(A) and (e) does not end the matter. As stated in footnote 2, *ante*, the Attorney General now asserts the rifle is an AK47, one of the assault weapons *specifically listed* in section 12276, subdivision (a)(1)(A), and in his petition for writ of mandate, Mr. Harrott did describe the rifle as an "AK-47 2822." Therefore, the case should be remanded to the trial court for a resolution of this question.

## CONCLUSION

The judgment of the Court of Appeal is affirmed and the matter remanded for further proceedings consistent with this opinion.

Kennard, J., Baxter, J., and Chin, J., concurred.

**GEORGE, C. J.**—I respectfully dissent.

By today's decision, the majority eviscerates a key provision of California's Roberti-Roos Assault Weapons Control Act of 1989 (AWCA) that is directed at a type of assault weapon commonly used by drug dealers and gang members, the "AK series" semiautomatic rifle. In the face of the clearest possible statutory language—defining "assault weapon" for purposes of the AWCA to encompass "[a]ll AK series [rifles], *including but not limited to, the models identified as follows . . .*" (Pen. Code, § 12276, subd. (a)(1), italics added)[1]—the majority inexplicably concludes that this provision designates as assault weapons only the particular AK model rifles that are identified specifically by name in the statute, and does not permit the police, other law enforcement authorities, or the courts to treat as assault weapons other AK series semiautomatic rifles that are only minor variations of the listed AK models unless and until the particular AK series rifle has been explicitly included by name and model on a list promulgated by the Attorney General. As explained below, the statutory language in question was adopted because the Legislature recognized the impossibility of compiling a comprehensive list of all AK series rifles (in light of the circumstance that manufacturers, importers, and sellers traditionally have referred to these weapons by different names and continually have issued new AK model rifles containing only minor variations from previous models). The Legislature, notwithstanding these circumstances, concluded that it was essential—in view of the popularity of AK series rifles among criminals and the relatively inexpensive nature of these weapons—to ensure that *all* AK series rifles be treated as assault weapons. By refusing to heed the clear statutory language classifying *all* AK series rifles as assault weapons (whether specifically identified by name and model, or not), the majority creates a loophole in California's assault weapons control legislation that the Legislature plainly intended to eliminate. Although the detrimental effect of the majority's holding may be lessened in the future by the expanded reach of the 1999 amendment of the AWCA and the current Attorney General's apparent willingness to attempt to keep up with firearm manufacturers' production of new AK models by adding such weapons to an administratively compiled list, in my view today's decision nonetheless represents a clear and unwarranted frustration of legislative intent.

I

As this court explained in *Kasler v. Lockyer* (2000) 23 Cal.4th 472, 477-478 [97 Cal.Rptr.2d 334, 2 P.3d 581], before the AWCA was amended

---

[1] All further statutory references are to the Penal Code, unless otherwise indicated.

in 1999 to add a generic definition of "assault weapon" (based upon whether a weapon contains specified general features or characteristics, such as a protruding pistol grip and the capacity to accept a detachable magazine or a fixed magazine that can carry more than 10 rounds) (see § 12276.1), the AWCA provided two means by which a weapon could be found to be an "assault weapon" for purposes of the act. These were the following: (1) a weapon was defined as an assault weapon if it was included within the list designated as assault weapons by the Legislature itself in *section 12276*; and (2) a weapon additionally could be found to an assault weapon if it was "declared" to be an assault weapon in a court action instituted by the Attorney General pursuant to the so-called add-on procedure set forth in *section 12276.5.*

Although most of the weapons included in the list set forth in section 12276 are identified by specific make and model, in some instances section 12276 refers not to a specific make or model but to a designated "series" of weapons. (§ 12276, subd. (a)(1) ["AK series"], (a)(5) ["Colt AR-15 series"].)[2] The particular subdivision of section 12276 that is at issue in this case—section 12276, subdivision (a)(1)—constitutes one such provision, involving "AK series" semiautomatic rifles.

---

[2]Section 12276 provides in full:

"As used in this chapter, 'assault weapon' shall mean the following designated semiautomatic firearms:

"(a) All of the following specified rifles:

 "(1) All AK series including, but not limited to, the models identified as follows:

 "(A) Made in China AK, AKM, AKS, AK47, AK47S, 56, 56S, 84S, and 86S.

 "(B) Norinco 56, 56S, 84S, and 86S.

 "(C) Poly Technologies AKS and AK47.

 "(D) MAADI AK47 and ARM.

 "(2) UZI and Galil.

 "(3) Beretta AR-70.

 "(4) CETME Sporter.

 "(5) Colt AR-15 series.

 "(6) Daewoo K-1, K-2, Max 1, Max 2, AR 100, and AR 110C.

 "(7) Fabrique Nationale FAL, LAR, FNC, 308 Match, and Sporter.

 "(8) MAS 223.

 "(9) HK-91, HK-93, HK-94, and HK-PSG-1.

 "(10) The following MAC types:

 "(A) RPB Industries Inc. sM10 and sM11.

 "(B) SWD Incorporated M11.

 "(11) SKS with detachable magazine.

 "(12) SIG AMT, PE-57, SG 550, and SG 551.

 "(13) Springfield Armory BM59 and SAR-48.

 "(14) Sterling MK-6.

 "(15) Steyer AUG.

 "(16) Valmet M62S, M71S, and M78S.

 "(17) Armalite AR-180.

 "(18) Bushmaster Assault Rifle.

 "(19) Calico M-900.

Section 12276, subdivision (a)(1) currently provides in full:

"As used in this chapter [i.e., the AWCA], 'assault weapon' shall mean the following designated semiautomatic firearms:

"(a) All of the following specified rifles:

"(1) *All AK series, including, but not limited to, the models identified as follows*:

"(A) Made in China AK, AKM, AKS, AK47, AK47S, 56, 56S, 84S, and 86S.

"(B) Norinco 56, 56S, 84S, and 86S.

"(C) Poly Technologies AKS and AK47.

"(D) MAADI AK47 and ARM." (Italics added.)

---

"(20) J&R ENG M-68.
"(21) Weaver Arms Nighthawk.
"(b) All of the following specified pistols:
"(1) UZI.
"(2) Encom MP-9 and MP-45.
"(3) The following MAC types:
"(A) RPB Industries Inc. sM10 and sM11.
"(B) SWD Incorporated M-11.
"(C) Advance Armament Inc. M-11.
"(D) Military Armament Corp. Ingram M-11.
"(4) Intratec TEC-9.
"(5) Sites Spectre.
"(6) Sterling MK-7.
"(7) Calico M-950.
"(8) Bushmaster Pistol.
"(c) All of the following specified shotguns:
"(1) Franchi SPAS 12 and LAW 12.
"(2) Striker 12.
"(3) The Streetsweeper type S/S Inc. SS/12.
"(d) Any firearm declared by the court pursuant to Section 12276.5 to be an assault weapon that is specified as an assault weapon in a list promulgated pursuant to Section 12276.5.
"(e) The term 'series' includes all other models that are only variations, with minor differences, of those models listed in subdivision (a), regardless of the manufacturer.
"(f) This section is declaratory of existing law, as amended, and a clarification of the law and the Legislature's intent which bans the weapons enumerated in this section, the weapons included in the list promulgated by the Attorney General pursuant to Section 12276.5, and any other models which are only variations of those weapons with minor differences, regardless of the manufacturer. The Legislature has defined assault weapons as the types, series, and models listed in this section because it was the most effective way to identify and restrict a specific class of semiautomatic weapons."

Section 12276, subdivision (e), in turn, provides in full: *"The term 'series' includes all other models that are only variations, with minor differences, of those models listed in subdivision (a), regardless of the manufacturer."* (Italics added.)

In light of this explicit statutory language, I believe the majority clearly is mistaken in concluding that only those AK series rifles specifically identified by make or model in section 12276, subdivision (a)(1)(A) through (a)(1)(D), are designated by section 12276 itself as assault weapons for purposes of the AWCA. Instead, as the plain language of subdivisions (a) and (e) establishes, the Legislature has provided in section 12276 that *all* AK series rifles ("including, but not limited to" the specifically identified AK series rifles) are assault weapons for purposes of the AWCA, and further has specified that the term "AK series" includes "all other models that are only variations, with minor differences, of those models listed in subdivision (a), regardless of the manufacturer."

## II

Not only is the majority's conclusion untenable in view of the plain language of the applicable statutory provisions, but the legislative history of the relevant portions of section 12276 demonstrates that this language was added to the AWCA in 1991 for the specific purpose of making it clear that the firearms that are *legislatively designated* as assault weapons in section 12276 include *all* AK series rifles, *whether the particular model of the rifle is one specifically listed in section 12276 or not.* The majority's interpretation largely frustrates the objective of the 1991 amendments.

When section 12276 first was enacted in 1989 as part of the original Roberti-Roos Assault Weapons Control Act of 1989 (Stats. 1989, ch. 19, § 3, p. 64), the pertinent provisions of subdivision (a) read as follows:

"As used in this chapter, 'assault weapon' shall mean the following firearms known by trade names:

"(a) All of the following specified rifles:

"(1) Avtomat Kalashnikovs (AK) series.

"(2) Uzi and Galil.

"(3) Beretta AR-70 (SC-70).

"(4) CETME G3.

"(5) Colt AR-15 series and CAR-15 series.

"[Listing other rifles in 18 additional separately numbered subparts ((6)—(23)) of subdivision (a).]" (Stats. 1989, ch. 19, § 3, p. 64.)

Although, as the quoted language indicates, two provisions of the 1989 version of section 12276—subdivision (a)(1) and (5)—referred to a "series" of rifles, rather than to a specific make and model, the 1989 version of section 12276 did not define the term "series."[3]

In addition to section 12276, in which the Legislature set forth a list of firearms that it specified were assault weapons for purposes of the AWCA, the 1989 legislation included another provision—section 12276.5—which established an "add-on" procedure that authorizes the Attorney General to institute a proceeding in certain superior courts to obtain a declaration that *another model* of firearm, *not listed in section 12276*, should be considered an assault weapon, upon a showing that the other model "is identical to one of the assault weapons listed in section 12276 except for slight modifications and enhancements . . . ." (§ 12276.5, subd. (a)(1).) In 1990, the Legislature added a new subdivision to section 12276.5—section 12276.5, subdivision

---

[3]A memorandum in the legislative history materials of the 1991 legislation explains why, in the 1989 version of section 12276, the AK rifles were listed as a series, whereas most of the other designated weapons were listed by specific manufacturer and model. The memorandum was written in February 1991 by S.C. Helsley, Assistant Director, Investigation and Enforcement Branch of the California Department of Justice, who apparently was directly and extensively involved in producing the list of assault weapons included in the 1989 legislation.

Assistant Director Helsley's memorandum explains in pertinent part: "My function throughout the process was to generate lists of weapons to be banned or exempted. As these lists were produced, there was ongoing anxiety about how to describe the weapons in the legislation. The 'AK' is the best example. Our attempt to describe them had four distinct stages. They were:

"• All AVTOMAT KALASHNIKOV semiautomatic rifles of military style.

"• By model AKS, AKM, etc.

"• By manufacturer or importer—Norinco, Poly Technologies, etc., and

"• Finally by AVTOMAT KALASHNIKOVS (AK) series.

"The reasoning which led to the final 'series' description was based on four factors. They were:

"• Not all AK's were of 'military style.'

"• Given the time frame involved, we were not convinced that we could determine all the manufacturers whose AK's ha[d] been imported.

"• The use of model numbers/names was impractical as wholesalers were advertising weapons with designations that were at odds with the manufacturers description.

"• Manufacturers emphasized the semiautomatic AK's lineage with the military version. Advertisements also referred to 'series.' "

The memorandum adds: "Since the law took effect, AK 47's have been assembled in the United States with a whole new set of model numbers . . . ."

(g)—that directed the Attorney General to "prepare a description for identification purposes, including a picture or diagram, of each assault weapon listed in Section 12276, and any firearm declared to be an assault weapon pursuant to this section [i.e., pursuant to the add-on procedure of section 12276.5]," and to "distribute the description to all law enforcement agencies."

Perhaps because the 1989 version of section 12276 had not included a definition of the term "series," and because it was unclear whether the descriptive pictures or diagrams to be prepared by the Attorney General under section 12276.5, subdivision (g), were intended to limit the scope of section 12276's references to "series" of firearms, some confusion and controversy arose with regard to the proper interpretation and application of those subparts of section 12276 that defined assault weapons to include specified "series" of rifles. The 1991 amendments to section 12276 at issue in this case were aimed specifically at eliminating such confusion and at clarifying the Legislature's intent with regard to the proper application of those portions of section 12276.

As relevant here, the 1991 enactment amended section 12276 by modifying the language of subdivision (a), and by adding two new subdivisions, subdivisions (e) and (f), to section 12276. (Stats. 1991, ch. 954, § 2, pp. 4440-4441.)

As amended in 1991, section 12276, subdivision (a), now reads in relevant part:

"As used in this chapter, 'assault weapon' shall mean the following designated semiautomatic firearms:

"(a) All of the following specified rifles:

"(1) *All AK series, including but not limited to, the models identified as follows*:

"(A) Made in China AK, AKM, AKS, AK47, 56, 56S, 84S, and 86S.

"(B) Norinco 56, 56S, 84S, and 86S.

"(C) Poly Technologies AKS and AK47.

"(D) MAADI AK47 and ARM.

[Listing other rifles in 20 additional separately numbered subparts ((2) —(21)) of subdivision (a)]." (Stats. 1991, ch. 954, § 2, p. 4440, italics added.)

Section 12276, subdivisions (e) and (f)—the new subdivisions of section 12276 added by the 1991 legislation—provide as follows: "(e) *The term 'series' includes all other models that are only variations, with minor differences, of those models listed in subdivision (a), regardless of the manufacturer.*" (Italics added.)

"(f) This section is declaratory of existing law, as amended, and a clarification of the law and the Legislature's intent which bans the weapons enumerated in this section, the weapons included in the list promulgated by the Attorney General pursuant to Section 12276.5, and any other models which are only variations of those weapons with minor differences, regardless of the manufacturer. *The Legislature has defined assault weapons as the types, series, and models listed in this section because it was the most effective way to identify and restrict a specific class of semiautomatic weapons.*" (Italics added; see fn. 2, *ante.*)

Thus, as amended in 1991, the explicit language of section 12276, subdivision (a)(1)—"[a]ll AK *series including, but not limited to,* the models as identified as follows" (italics added)—and of subdivision (e)—"[t]he term 'series' includes *all other models that are only variations, with minor differences, of those models listed in subdivision (a), regardless of the manufacturer*" (italics added)—leaves no doubt that section 12276 *itself* designates as assault weapons not only the specific AK models listed in subdivision (a)(1), but also "all other models that are variations, with minor differences, of those models . . . , regardless of the manufacturer."

As the principal author of the 1991 amendment explained, the Legislature determined that such a clarification of the scope of section 12276 was warranted and necessary because of the continuing availability and proliferation of AK series rifles and the attractiveness of such weapons for use in criminal activities.[4] Furthermore, in incorporating these amendments into *section 12276*, the Legislature obviously concluded that the designation as

---

[4]In a letter written to Governor Wilson at the time the enrolled version of the 1991 amendment was before the Governor for his signature or veto, Senator Roberti, the principal sponsor of the 1991 legislation (as well as a principal sponsor of the original Roberti-Roos Assault Weapons Control Act of 1989), explained: "The enrolled version of the bill before you does not add any new weapons to the banned assault weapons list. In fact, four weapons were deleted from the list. The NRA arguments that there are now additional weapons on the list result from a disagreement over the meaning of the word 'series' in the original law signed by Governor Deukmejian. *The legislative intent regarding the word series was to cover all models of weapons listed in the category. The most important example is that of the 'AK series.'*

"*Law enforcement believed, and gun experts confirmed, that there would be no agreement on a comprehensive list of all models of AKs. The reason for this is that manufacturers, importers, and sellers call the weapons by different names. There is no systematic procedure by which*

assault weapons of *all* AK series rifles, including AK rifles other than those AK rifles specifically identified by make and model in the amended provision, need not and should not be left to separate add-on proceedings under *section 12276.5*, proceedings which might or might not be instituted by the particular officeholder occupying the position of Attorney General. The add-on provisions of section 12276.5 remain available for use against copy-cat or knockoff versions of the *non-series* weapons listed in section 12276, but the Legislature clearly determined that *all* of the listed *series* weapons were to be considered assault weapons pursuant to section 12276 itself.

As the majority note, the 1991 amendments to section 12276 constitute only a portion of the 1991 legislation amending the AWCA. One of the objectives of the 1991 enactment was to afford gun owners who had not registered their assault weapons during the 18-month grace period provided by the 1989 legislation an added period of time to register their weapons without incurring criminal liability, and a number of provisions of the 1991 legislation were directed at that objective. The legislative history of the 1991 enactment makes it clear, however, that in order to gain the necessary support of legislators who advocated stronger gun control legislation, the proponents of the extended grace period were required to accept the amendments to section 12276 that are at issue in this case.[5]

---

*weapons are designated. Therefore, since the AK was an assault weapon that was relatively inexpensive and popular for drug dealers and gang members, the Legislature by designating AK series, intended to cover all models regardless of the manufacturer of the AK.*

"The Attorney General believed that by listing the most popular models in the AK series we would enhance public awareness and enforcement actions. *You will note, however, that the list is not inclusive by the models listed because of the original legislative intent to regulate all AK models. . . .*" (Sen. David Roberti, letter to Governor Wilson re: Sen. Bill 263 (1990-1991 Reg. Sess.) Sept. 19, 1991, italics added.)

Although Senator Roberti's letter does not refer explicitly to legislative debates or discussions and thus may not be relied upon to establish general legislative intent (see, e.g., *California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699-701 [170 Cal.Rptr. 817, 621 P.2d 856]), Senator Roberti's letter, like the letter by Senator Rogers to Governor Deukmejian referred to by the majority (see maj. opn., *ante*, p. 1147, fn. 4), provides a clear expression of the author's view of the measure, a view that is totally consistent with the legislative language and history.

[5]As initially introduced in the Senate on January 31, 1991, Senate Bill No. 263 (1990-1991 Reg. Sess.) (hereafter Sen. Bill 263) did not propose any changes in section 12276, and was concerned only with extending the deadline for registering assault weapons and directing the Department of Justice to conduct a public education program to promote such registration. (Sen. Bill 263, as introduced Jan. 31, 1991.) After relatively minor amendments, Sen. Bill 263 was approved by the Senate in that form, but on April 3, 1991, the bill was amended in the Assembly to include, among other changes, some modification to the language of section 12276. (Sen. Bill 263, as amended Apr. 3, 1991, § 2, pp. 5-6.) The final changes to Sen. Bill 263—including the new version of section 12276, subdivision (a), and the addition of section 12276, subdivisions (e) and (f)—did not occur until shortly before the end of the legislative session, when the bill was amended in the Assembly for the last time on September 5, 1991.

As this court's opinion in *Kasler v. Lockyer, supra,* 23 Cal.4th 472 related at some length, the assault weapons legislation enacted in 1989 was the product of legislative compromise in which legislators with very different views concerning gun control hammered out a statutory measure that was less than fully satisfactory to each of the competing factions. (See *id.* at pp. 484-488.) The legislative history of the 1991 amendment of the AWCA demonstrates that it too was the product of legislative compromise. The majority's holding in this case, however, is not faithful to the legislative compromise embodied in the 1991 enactment, but instead largely negates both the revision of section 12276, subdivision (a)(1), and the addition of section 12276, subdivision (e), which the proponents of the initial version of Senate Bill 263 agreed to in order to obtain the necessary support for affording gun owners an extended grace period in which to register assault weapons.

## III

The majority is compelled to recognize that the "including, but not limited to" language of section 12276, subdivision (a)(1), and the provisions of section 12276, subdivision (e), that were added by the Legislature in 1991 must be given *some* meaning. Rather than affording this language its plain meaning, however, the majority holds that the statutory provisions in question should be interpreted as "not self-executing" (maj. opn., *ante,* p. 1150)—that is, as not *themselves* rendering all AK series rifles "assault weapons" for purposes of the AWCA. Instead, the majority interprets these statutory provisions only as granting *the Attorney General* the authority to designate an AK series rifle that is not one of the named AK series rifles an "assault weapon," an authority the Attorney General assertedly may exercise by including the rifle name and model on the list of assault weapons that the Attorney General is required, under section 12276.5, subdivision (h), to compile and submit to the Secretary of State for publication in the California Code of Regulations.[6]

The majority's conclusion that the "included but not limited to" language of section 12276, subdivision (a)(1), was not intended to be self-executing

---

(Sen. Bill 263, as amended Sept. 5, 1991, § 2, pp. 15-18.) After approval by both houses, the bill was signed into law by the Governor on October 13, 1991.

Contemporary media accounts confirm that the proponents of the extended grace or amnesty period for registration obtained the necessary support for the passage of the 1991 legislation by agreeing to the revised provisions of section 12276 that related primarily to the treatment of all "AK series" rifles as assault weapons. (See, e.g., Ingram, *Lungren, Roberti OK Rewriting of '89 Gun Law,* L.A. Times (Aug. 29, 1991) p. A 3; Ingram, *Bill Extending Assault Gun Deadline Passes Committee,* L.A. Times (Feb. 14, 1991) p. A 42.)

[6]Section 12276.5, subdivision (h), provides in full: "The Attorney General shall promulgate a list that specifies all firearms designated as assault weapons in Section 12276 or declared to be assault weapons pursuant to this section. The Attorney General shall file that list with the Secretary of State for publication in the California Code of Regulations. Any declaration that

finds absolutely *no* support in the language of the statute or in its legislative history. Whether or not the Attorney General, pursuant to the separate authority granted the Attorney General by section 12276.5, subdivision (i), to "adopt those rules or regulations that may be necessary or proper to carry out the purposes and intent of this chapter,"[7] possesses *the authority* to include, in the list of assault weapons promulgated pursuant to section 12276.5, subdivision (h), particular models that the Attorney General determines are "AK series" rifles within the meaning of section 12276, subdivisions (a)(1) and (e) even though they are not listed by name in section 12276, subdivision (a)(1)(A)-(a)(1)(D), *nothing* in section 12276, subdivision (a)(1) or (e), suggests that such an AK series rifle constitutes an assault weapon *only* if it is so designated by the Attorney General and is included on a list promulgated and published pursuant to section 12276.5, subdivision (h).

By its terms, section 12276, subdivision (a)(1), defines "[a]*ll* AK series" rifles (italics added) as assault weapons in exactly the same manner as it defines as assault weapons all of the other firearms that are listed in section 12276, subdivisions (a), (b), and (c). There is no suggestion in section 12276 or any other provision of the AWCA that any category of firearm designated as an assault weapon in section 12276 first must be included on the list of weapons promulgated by the Attorney General under section 12276.5, subdivision (h), before it can be found to constitute an assault weapon for purposes of the AWCA. Indeed, a separate provision of the AWCA, section 12280, subdivision (u)—also enacted as part of the 1991 legislation— directly refutes any such notion, providing that "[a]s used in this chapter, the date a firearm is an assault weapon is the *earliest* of the following: [¶] (1) The effective date of an amendment to Section 12276 that adds the designation of the specified firearm. [or] [¶] 2. The effective date of the list promulgated pursuant to Section 12276.5 that adds or changes the designation of the specified firearm. . . ." (Italics added.) Thus, under the 1991 amendment of section 12276, subdivision (a)(1), "[a]ll AK series" rifles properly are treated as assault weapons *as of the effective date of the 1991 legislation*, rather than as of any subsequent date that a particular rifle may be included on the list promulgated pursuant to section 11276.5, subdivision (h).

---

a specified firearm is an assault weapon shall be implemented by the Attorney General who, within 90 days, shall promulgate an amended list which shall include the specified firearm declared to be an assault weapon. The Attorney General shall file the amended list with the Secretary of State for publication in the California Code of Regulations. [¶] Chapter 3.5 (commencing with Section 11340) of Division 3 of Title 2 of the Government Code, pertaining to the adoption of rules and regulations, shall not apply to any list of assault weapons promulgated pursuant to this section."

[7]Section 12276.5, subdivision (i), provides in full: "The Attorney General shall adopt those rules or regulations that may be necessary or proper to carry out the purposes and intent of this chapter."

Not only does the majority's interpretation of the "including, but not limited to" language of section 12276, subdivision (a)(1), as not self-executing find no support in the language of the statute, but it is plainly inconsistent with the intent of the 1991 amendment of section 12276, subdivision (a)(1). Under the majority's interpretation, an Attorney General who is hostile to the regulation of assault weapons would be able to thwart the effect of the 1991 amendment relating to AK series rifles simply by failing to add nonspecified AK series rifles to the list promulgated under section 12276.5, subdivision (h). As discussed above, the Legislature intentionally chose to specify *in section 12276* that *all* AK series rifles are assault weapons, rather than to leave the designation of other AK series rifles as assault weapons to add-on proceedings that might or might not be instituted by an Attorney General *under section 12276.5*. There is nothing in the 1991 legislation that suggests that the Legislature nevertheless intended to leave to an Attorney General the exclusive authority to determine whether, and when, an AK series rifle that is not one of the AK series rifles identified by name in the statute would be designated an assault weapon for purposes of the AWCA.

Indeed, under the majority's interpretation it appears that notwithstanding the Legislature's amendment of section 12276 in 1991 to clarify that all AK series rifles, "including, but not limited to" the specifically identified AK model rifles, are assault weapons, that amendment had absolutely no effect on the reach or scope of the AWCA *for nearly a decade*. As far as my research discloses (and neither the parties nor the majority suggests otherwise), the list of assault weapons that section 12276.5, subdivision (h), directed the Attorney General to promulgate and to file with the Secretary of State for publication in the California Code of Regulations, never was published *at all* in the 1990's, and was promulgated and published for the first time *in October 2000*. (See Cal. Code Regs., tit. 11, §§ 979.10, 979.11, filed Oct. 25, 2000.) In my view, it belies reality to suggest that the Legislature, in enacting the 1991 amendments to section 12276, intended to vest the Attorney General with veto power over whether an AK series rifle is to be considered an assault weapon for purposes of the AWCA.[8]

In sum, the language and legislative history of the 1991 amendments of section 12276 establish that the Legislature intended to define "assault

---

[8]Although the majority asserts that its interpretation of section 12276, subdivisions (a)(1) and (e), as not self-executing is supported by the doctrine that accords deference to an administrative agency's construction of a statute (maj. opn., *ante*, pp. 1153-1154), that doctrine has considerably less force in the context of an administrative interpretation, like that involved here, that is espoused for the first time by an administrative official in an appellate brief and that is not embodied in either an administrative regulation or in a similar administrative ruling that has been made after formal proceedings in which adversarial views are aired. (See, e.g., *United States v. Mead Corporation* (2001) 533 U.S. 218, __ [121 S.Ct. 2164, 2168-2175, 150 L.Ed.2d 292]; *Bowen v. Georgetown Univ. Hospital* (1988) 488 U.S. 204,

weapon" for purposes of the AWCA to include *all* AK series rifles, including but not limited to the specifically identified AK models, and did not intend to leave all other AK series models unregulated until some future date when an Attorney General might include additional AK series models by name on the list called for by section 12276.5, subdivision (h).

The majority further suggests that its interpretation of section 12276, subdivisions (a)(1) and (e), as "non-self-executing" is justified in order to avoid constitutional vagueness problems. I disagree. As noted, the statutory language defines "assault weapon" for purposes of the chapter to include "[a]ll AK series [semiautomatic rifles] including, but not limited to" a number of specifically named models, and then defines the term "series" to include "all other models that are only variations, with minor differences, of those models listed in subdivision (a), regardless of the manufacturer." This language is arguably narrower and more specific than other familiar weapons statutes that, for example, prohibit the possession of (1) a "dirk or dagger" (§ 12020, subds. (a)(4), (c)(24)), (2) "an instrument or weapon of the kind commonly known as a . . . billy" (§ 12020, subd. (a)(1)), or (3) a "destructive device" (§ 12301)—and than a well-established statutory provision that, in another context involving a registration requirement, requires the registration of a "security" before it is offered for sale (Corp. Code, § 25019; see, e.g., *People v. Figueroa* (1986) 41 Cal.3d 714, 734-740 [224 Cal.Rptr. 719, 715 P.2d 680]). Vagueness challenges to these statutes routinely have been rejected by California decisions. (See, e.g., *People v. Rubalcava* (2000) 23 Cal.4th 322, 332-333 [96 Cal.Rptr.2d 735, 1 P.3d 52]; *People v. Grubb* (1965) 63 Cal.2d 614, 619-621 [47 Cal.Rptr. 772, 408 P.2d 100]; *People v. Quinn* (1976) 57 Cal.App.3d 251 [129 Cal.Rptr. 139].)

In any event, even if there may be some circumstances in which application of section 12276, subdivisions (a)(1) and (e) conceivably might raise constitutional vagueness problems as applied to an ordinary gun owner, it is abundantly clear that the statutory provisions in question are not unconstitutionally vague either on their face or as applied to the facts of the present case. The majority's discussion of the vagueness issue fails to take into account that the provisions of the AWCA apply not only to ordinary owners or possessors of weapons but, perhaps even more significantly, to those who manufacture, import, transport, distribute, or offer such weapons for sale within the state. (§ 12280, subd. (a)(1).) Even if in some circumstances an

212-213 [109 S.Ct. 468, 473-474, 102 L.Ed.2d 493]; *Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 9 [78 Cal.Rptr.2d 1, 960 P.2d 1031]; *People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 311 [58 Cal.Rptr.2d 855, 926 P.2d 1042]; *Jones v. Tracy School Dist.* (1980) 27 Cal.3d 99, 107 [165 Cal.Rptr. 100, 611 P.2d 441]; *Culligan Water Conditioning v. State Bd. of Equalization* (1976) 17 Cal.3d 86, 92-93 [130 Cal.Rptr. 321, 550 P.2d 593].)

ordinary gun owner could not reasonably be expected or required to determine whether a poorly or ambiguously marked rifle is part of the AK series under the "minor differences" standard of section 12276, subdivision (e), a manufacturer, importer, or distributor of semiautomatic weapons surely can be expected to be aware of a weapon's features and design origins and to be able to apply the statutory standard with reasonable certainty. The 1991 amendments here at issue plainly were intended, at the very least, to bar the introduction of new AK series semiautomatic rifles into the California market, and the provisions unquestionably provide adequate notice to manufacturers, importers, and firearm dealers that "copycat" AK rifles are prohibited in this state. Accordingly, even if in some instances a gun owner might plausibly claim a lack of reasonable notice, the provisions designating *all* AK series rifles as assault weapons for purposes of the AWCA clearly are not unconstitutionally vague *on their face,* i.e., in all applications. Contrary to the majority's assertion, these statutory provisions are not reasonably " 'susceptible of two constructions' " (maj. opn., *ante,* pp. 1153-1154). Thus, the constitutional vagueness doctrine provides no justification for the majority to rewrite the provisions so as to eliminate their prohibition of the manufacture, importation, or distribution of *all* AK series rifles in this state.

Furthermore, although plaintiff J. W. Harrott is not a manufacturer or importer of weapons, it is equally clear that, on the facts of this case, Harrott cannot reasonably complain of a lack of adequate notice. As the majority's statement of facts discloses, Harrott never possessed the weapon in question, and thus he was not required to determine, subject to potential criminal sanctions, whether it was part of the AK series and therefore a restricted assault weapon. The sheriff expressly informed Harrott of the sheriff's belief that the rifle was part of the AK series, thereby giving Harrott ample notice that if he did gain possession of the gun he would be subject to criminal prosecution. Ultimately, the weapon's status under section 12276 was determined in a judicial proceeding, with full notice and hearing, and with no potential for unexpected liability.

Accordingly, the constitutional vagueness doctrine provides no justification for the majority's determination to read the provisions of section 12276, subdivisions (a)(1) and (e) as non-self-executing.

IV

Furthermore, contrary to the majority's assertion, this court's decision in *In re Jorge M.* (2000) 23 Cal.4th 866 [98 Cal.Rptr.2d 466, 4 P.3d 297] lends no support to the majority's reading of the statute. Unlike *Jorge M.,* the present case does not involve a criminal prosecution, and thus there is no

need to determine whether plaintiff Harrott did or did not possess the requisite mental state to sustain a criminal conviction. Insofar as *Jorge M.* concluded that it was inappropriate to interpret the criminal provisions of the AWCA as permitting the imposition of criminal liability without proof of scienter because, under the act, there will be "some instances in which the possessor of a semiautomatic firearm could reasonably be in doubt as to whether the weapon is subject to regulation under the AWCA" (23 Cal.4th at p. 884), that decision is completely consistent with an interpretation of section 12276, subdivision (a)(1), that recognizes that a rifle may be found to fall within the "AK series" even if it is not one of the specific AK models listed in that subdivision or is not identified by name in the list compiled by the Attorney General. Under *Jorge M.*, if a rifle is found to be an assault weapon because it is merely a variation of one of the listed AK models, the possessor of the weapon will be subject to criminal conviction only if the prosecution proves that he or she "knew or reasonably should have known" that the firearm possessed the characteristics bringing it within the act. Even when a criminal sanction is not available because the possessor lacks the requisite scienter required by *Jorge M.*, treating a semiautomatic rifle that is a variation of one of the listed AK models as an assault weapon still will significantly serve the purposes of the 1991 legislation by permitting law enforcement officers to confiscate (or, as in this case, to withhold) a dangerous weapon that otherwise might be used violently in the future against law enforcement officers or crime victims.

Similarly, the majority embraces a clearly specious argument when it endorses the contention of the National Rifle Association (NRA) that the trial court's interpretation of the statute is invalid because it "could lead to the same weapon being treated differently from county to county and even within the same county." Whenever the terms of a statute are to be applied in the context of particular cases, there is always the possibility that different triers of fact may arrive at different conclusions on similar showings. Thus, even with regard to those semiautomatic weapons that are specifically listed by make and model in section 12276, if the markings on a weapon have been obliterated or if the possessor of the weapon claims that the weapon is actually a lawful weapon that has been improperly marked, it is always possible that different triers of fact may come to different conclusions as to whether an individual firearm falls within the statute. Similarly, in determining whether or not a particular firearm is an assault weapon in light of the generic characteristics set forth in the recently enacted provisions of section 12276.1, it is possible that different triers of fact could reach different conclusions on similar evidence. This circumstance, however, does not mean that these statutory standards do not each constitute uniform, statewide definitions of the term "assault weapon," just as the term "dirk or dagger,"

for example, constitutes a single, statewide standard even though different triers of fact could reach different conclusions as to whether a particular implement or instrument falls within that category. Under section 12276, subdivision (a)(1), in *all* counties in this state "[*a*]*ll* AK series" semiautomatic rifles, "*including but not limited to*" the specifically listed AK models, are "assault weapons" for purposes of the AWCA, and, in *all* counties, " 'series' includes all other models that are only variations, with minor differences, of those models listed in subdivision (a), regardless of the manufacturer" (*id.*, subd. (e)). The NRA's suggestion to the contrary is totally without merit.

## V

Finally, on the record in this case, I believe the trial court properly found that the semiautomatic rifle in question is an "AK series" rifle under section 12276, subdivision (a)(1), and thus constitutes an "assault weapon" for purposes of the AWCA.

As the majority acknowledges, the petition for writ of mandate filed by Harrott in the superior court itself identified the semiautomatic rifle in question as an "AK47 2822." Nonetheless, Harrott contended in the trial court that the weapon does not fall within the category of "AK series" rifles within the meaning of section 12276, subdivision (a)(1), because the weapon does not have the specific "markings" designated in the 1993 edition of the Assault Weapons Identification Guide prepared by the California Attorney General.

Two experts testified at the hearing in the trial court. Although both testified that the rifle is very similar both in appearance and in function to an AK rifle, and that they both would consider the rifle to be an "AK-type" weapon, the experts also testified that in their opinion the rifle is not an "AK series" weapon. Each expert acknowledged, however, that he based his opinion that the rifle was not an "AK series" rifle on the circumstance that, at the time of the hearing, the California Attorney General had taken the position that a weapon fell within the "AK series" only if the weapon had the "original markings and a nomenclature of a model and manufacturer."

At the conclusion of the hearing, the trial court determined, on the basis of the factual matters to which the experts had testified, that the weapon in question constituted an "AK series" weapon as defined by the Legislature. The trial court explained that under the statutory language, "a weapon which merely looks like an AK47 would not, by that alone, be part of the AK series," but that "a weapon which looks like an AK weapon and functions

like one and is identical to one with only minor differences would be an AK series weapon." The trial court found that the evidence established that there are no significant differences between the weapon at issue and an AK47, and thus that the rifle is an AK series weapon. The court noted that the experts' opinion testimony indicating that the rifle was not an AK series weapon was based on an interpretation of the statute that was not supported by the statutory language.

In view of the evidence presented at the hearing, I believe the trial court properly found that the rifle in question is an "AK series" rifle under section 12776, subdivision (a)(1).

Accordingly, I conclude that the judgment of the Court of Appeal, which overturned the ruling of the trial court, should be reversed.

Werdegar, J., concurred.